Nos. 23-1535, 23-1645
———————————————————

# UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

———————————————————

L.M., a minor by and through his father and stepmother and natural guardians,
Christopher and Susan Morrison,
**PLAINTIFF - APPELLANT**,

v.

TOWN OF MIDDLEBOROUGH, MASSACHUSETTS; MIDDLEBOROUGH
SCHOOL COMMITTEE; CAROLYN J. LYONS, Superintendent Middleborough
Public Schools, in her official capacity; HEATHER TUCKER, Acting Principal, Nichols
Middle School, in her official capacity,
**DEFENDANTS - APPELLEES**

———————————————————

ON APPEAL FROM DENIAL OF PRELIMINARY INJUNCTION AND ENTRY
OF FINAL JUDGMENT BY THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS
———————————————————

## BRIEF OF *AMICUS CURIAE*
## AMERICAN CIVIL LIBERTIES UNION OF MASSACHUSETTS, INC.
## IN SUPPORT OF NEITHER PARTY AND
## IN FAVOR OF REVERSAL AND REMAND

———————————————————

Ruth A. Bourquin (1st Cir. No. 13282)
Kirsten V. Mayer (1st Cir. No. 71971)
Rachel E. Davidson (1st Cir. No. 1197867)
AMERICAN CIVIL LIBERTIES UNION
 FOUNDATION OF MASSACHUSETTS, INC.
One Center Plaza, Suite 850
Boston, MA 02108
617-482-3170
rbourquin@aclum.org
kmayer@aclum.org
rdavidson@aclum.org

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1, the American Civil Liberties Union of Massachusetts, Inc., certifies that it does not have a parent corporation and that no publicly held corporation owns 10% or more of its stock.

# TABLE OF CONTENTS

Corporate Disclosure Statement ................................................................. i

Table of Contents ..................................................................................... ii

Table of Authorities ................................................................................ iii

Introduction ............................................................................................. 1

Interest of Amicus Curiae ........................................................................ 5

Argument ................................................................................................. 5

I.     Because the District Court erroneously relied on a "rights of others" analysis, the denial of the preliminary injunction and the entry of final judgment should be vacated and the matter remanded for further consideration under the disruption prong of *Tinker* and Mass. G.L. c. 71, § 82. ........................................................................................................ 6

     A.     Massachusetts law allows schools to restrict student speech only under a disruption analysis or when it constitutes bullying under the Massachusetts Anti-Bullying Statute. ...................................................... 7

     B.     The School has the burden of establishing, based on concrete facts, that the speech caused or was reasonably forecast to cause substantial and material disruption. .......................................................... 9

II.    Schools can express and promote a message of inclusivity, equality, and respect without undermining their authority to regulate student speech that expresses a contrary view and is reasonably forecast to cause substantial disruption. ....................................................................... 14

Conclusion ............................................................................................. 16

Certificate of Compliance ...................................................................... 17

Certificate of Service ............................................................................. 18

# TABLE OF AUTHORITIES

## Cases

*B.W.A v. Farmington R-7 Sch. Dist.,*
  554 F.3d 734 (8th Cir. 2009) ................................................................. 13, 16

*Barr v. Lafon,*
  538 F.3d 554 (6th Cir. 2008) ........................................................................13

*Bl(a)ck Tea Society v. City of Boston,*
  378 F.3d 8 (1st Cir. 2004) ..............................................................................5

*Commonwealth v. Bell,*
  442 Mass. 118 (2004) .....................................................................................7

*Commonwealth v. Carter,*
  488 Mass. 191 (2021) .....................................................................................1

*Commonwealth v. Rendersos,*
  440 Mass. 422 (2003) .....................................................................................8

*D.A. v. Tri Cnty. Area Schs.,*
  Civil Action 1:23-cv-00423 (W.D. Mich., Complaint filed April 25, 2023) ...............10

*Doe v. Hopkinton Pub. Schs.,*
  19 F.4th 493 (1st Cir. 2021) ...................................................................... 3, 8

*Hardwick ex. rel. Hardwick v. Heyward,*
  711 F.3d 426 (4th Cir. 2013) ............................................................12, 13, 15

*Kennedy v. Bremerton Sch. Dist.,*
  142 S. Ct. 2407 (2022) ............................................................................. 2, 15

*Mahanoy Area Sch. Dist. v. B.L.,*
  141 S. Ct. 2038 (2021) ...........................................................................*passim*

*Morgan v. Swanson,*
  659 F.3d 359 (5th Cir. 2011) .......................................................................15

*N.J. v. Sonnabend,*
  37 F.4th 412 (7th Cir. 2022) ................................................................. 11, 12

*Norris v. Cape Elizabeth Sch. Dist.,*
  969 F.3d 12 (1st Cir. 2020) .................................................................. 2, 3, 9

*Nuxoll ex. rel. Nuxoll v. Indian Sch. Dist. No. 204,*
  523 F.3d 668 (7th Cir. 2008) ................................................................. 11, 12

*Parents Defending Educ. v. Olentangy Local Sch. Dist. Bd. of Educ.,*
  2023 WL 4848509 (S.D. Ohio, July 28, 2023) (appeal filed) ........................12

*PruneYard Shopping Ctr. v. Robins,*
   447 U.S. 74 (1980) ...................................................................................8

*Pyle v. Sch. Comm. of South Hadley,*
   423 Mass. 283 (1996) ........................................................................3, 7, 8

*Pyle v. Sch. Comm. of South Hadley,*
   55 F.3d 20 (1st Cir. 1995) ......................................................................7

*Shelton v. Tucker,*
   364 U.S. 479 (1960) ...............................................................................1

*Shurtleff v. City of Boston,*
   142 S. Ct. 1583 (2022) .........................................................................15

*Sypniewski v. Warren Hills Reg. Bd. of Educ.,*
   307 F.3d 243 (3d Cir. 2002) ............................................................13, 14

*Tinker v. Des Moines Indep. Cmty. Sch. Dist.,*
   393 U.S. 503 (1969) .......................................................................*passim*

*West v. Derby Unified Sch. Dist. No. 260,*
   206 F.3d 1358 (10th Cir. 2000) ...........................................................13

*West Virginia State Bd. of Educ. v. Barnette,*
   319 U.S. 624 (1943) ...............................................................................1

*Zamecnik v. Indian Prairie Sch. Dist. No. 204,*
   636 F.3d 874 (7th Cir. 2011) ..............................................................12

## Constitutional Provisions

Massachusetts Constitution, Part II, ch. 5, § 2 .........................................1

Massachusetts Declaration of Rights, Art. 16 ............................................1

U.S. Constitution, First Amendment ...............................................*passim*

## Statutes

42 U.S.C. §§ 1681d *et seq.* ........................................................................1

42 U.S.C. §§ 2000d *et seq.* .......................................................................1

Mass. Gen. Laws ch. 71, § 37O .............................................................3, 6, 8

Mass. Gen. Laws ch. 71, § 82 ...........................................................*passim*

Mass. Gen. Laws ch. 75, § 5 .....................................................................14

Mass. Gen. Laws ch. 76, § 5 .................................................................1, 8

St. 1974, c. 670 ........................................................................................7

St. 1993, c. 282 ..............................................................................................8

St. 2010, c. 92, § 5 ........................................................................................8

St. 2011, c. 199 .............................................................................................8

## Rules

Fed. R. App. P. 26.1 ........................................................................................i

Fed. R. App. P. 29(a)(2) ................................................................................5

Fed. R. App. P. 29(c)(5) ................................................................................5

Fed. R. App. P. 32(a)(5) ..............................................................................17

Fed. R. App. P. 32(a)(6) ..............................................................................17

Fed. R. App. P. 32(a)(7)(B) .........................................................................17

Fed. R. App. P. 32(f) ...................................................................................17

## INTRODUCTION

Public schools in Massachusetts have a responsibility to safeguard student rights to freedom of speech—protected by the First Amendment to the U.S. Constitution, Article 16 of the Massachusetts Declaration of Rights, and Mass. G.L. c. 71, § 82—as well as student rights to receive the advantages and privileges of a public education on equal terms without regard to "race, color, sex, gender identity, religion, national origin or sexual orientation." Mass. G.L. c. 76, § 5.[1]

"The vigilant protection of constitutional freedoms is nowhere more vital than in the community of American schools," *Shelton v. Tucker*, 364 U.S. 479, 487 (1960), because public schools are "nurseries of democracy." *Mahanoy Area Sch. Dist. v. B.L.*, 141 S. Ct. 2038, 2046 (2021). Through learning to formulate and express their own views, students learn to think for themselves and to experience firsthand the fundamental precept that "in our constitutional constellation . . . no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein." *West Virginia State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943). By being exposed to ideas

---

[1] These equality principles are also enshrined in Part II, c. 5, section 2 of the Massachusetts Constitution, which recognizes a constitutional duty to cherish education and distribute wisdom and knowledge "among the different orders of the people," the equal protection guarantees of the state constitution, which protect against discrimination based on sexual orientation, *see, e.g., Commonwealth v. Carter,* 488 Mass. 191, 200-04 (2021), and federal non-discrimination statutes such as Titles VI and IX of the Civil Rights Act. 42 U.S.C. §§ 2000d *et seq.* and 1681 *et seq.*

they may not hear at home and viewpoints with which they may disagree—and even be offended by—students learn the values of being open to new ideas and of tolerating a diverse range of views and are better prepared to participate in a democratic society. *Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407, 2431 (2022) (referencing "a long constitutional tradition in which learning how to tolerate diverse expressive activities has always been 'part of learning how to live in a pluralistic society'").

At the same time, consistent with the First Amendment and Mass. G.L. c. 71, § 82, under appropriate circumstances schools can regulate student speech in K-12 schools to ensure that all students can be educated. When student expression causes or can reasonably be forecast to cause substantial and material disruption to the operation of the school or other students' educational experiences—or to infringe the rights of others—a school's restriction of that speech does not violate the First Amendment. *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 509, 511, 513 (1969).[2] The burden of justifying speech restrictions is on a school. *Norris v. Cape Elizabeth Sch. Dist.*, 969 F.3d 12, 25 (1st Cir. 2020).

The District Court concluded that Plaintiff-Appellant L.M. is not likely to succeed on his claim that the Nichols Middle School and the other Defendants-

---

[2] *See also Tinker*, 393 U.S. at 514 (referring to a forecast of "substantial disruption of or material interference with school activities"); *B.L.*, 141 S. Ct. at 2045 (quoting favorably *Tinker* formulation, 393 U.S. at 513, referring to speech that "materially disrupts classwork or involves substantial disorder . . . .").

Appellees (collectively "the School") violated his free speech rights when, in March and May respectively, they required him to remove a T-shirt with the message "THERE ARE ONLY TWO GENDERS" and then a T-shirt with the same message but with the word "CENSORED" appearing over the word "TWO."[3] The lower court grounded its decision solely on the "rights of others" prong of *Tinker*, concluding that the T-shirts' messages interfered with the rights of others and therefore could be barred by school authorities Appellant's Opening Brief, Addendum ("Add.") 11-12 & n. 4. Upon joint request by the parties, the District Court then entered final judgment based on the preliminary injunction record. Dkt. 61-63; J.A. 14.

Massachusetts law affords greater protection for student speech than does the First Amendment. *Pyle v. Sch. Comm. of South Hadley*, 423 Mass. 283, 286-87 (1996). Under state law, schools may restrict student speech only if it satisfies the disruption prong of *Tinker* or constitutes bullying as defined by state statute. *See id.* (construing student speech statute, Mass. G.L. c. 71, § 82); *Doe v. Hopkinton Pub. Schs.*, 19 F.4th 493, 511-12 (1st Cir. 2021) (construing anti-bullying statute, Mass. G.L. c. 71, § 37O).[4] The School has not contended the speech at issue here qualified as bullying. The District

---

[3] The T-shirts are depicted in the Verified Complaint, ¶¶ 8 and 104. Joint Appendix (J.A.), pp. 18 and 31.

[4] This Court has recognized that speech that qualifies as "bullying is the type of conduct that implicates the governmental interest in protecting against the invasion of the rights of others, as described in *Tinker*." *Norris*, 969 F.3d at 29. *Accord Doe v. Hopkinton Pub. Schs.*, 19 F.4th at 506. *See also. B.L.*, 141 S. Ct. at 2045 (discussing bullying).

Court's reliance on the "rights of others" analysis was therefore legal error.

Even if a "rights of others" rationale were not precluded by state law, the standard articulated by the lower court is not sufficiently rigorous. The District Court suggested that student speech can be suppressed under the "rights of others" prong if "a group of potentially vulnerable students will not feel safe." Appellant's Opening Brief, Add. 12. This articulation cannot suffice, including because it does not adequately distinguish between alleged feelings of unsafety and mere offense or hurt feelings, which cannot justify suppression of student speech.

Because state law forecloses reliance on the "rights of others" in this case and the District Court did not evaluate substantial disruption, it should be required to do so in the first instance. The District Court's denial of the request for a preliminary injunction and the entry of final judgment should therefore be vacated and the matter remanded to the District Court for evaluation of whether the School satisfies its burden under the substantial disruption standard. At the end of the day, in order for the restriction of speech to be lawful, the School must demonstrate that its forecast of substantial and material disruption was reasonable based on concrete and specific facts relevant to the middle school. The fact that L.M.'s speech would offend or hurt feelings is not sufficient.

# INTEREST OF AMICUS CURIAE[5]

The American Civil Liberties Union of Massachusetts (ACLUM) is a state affiliate of the national ACLU dedicated to protecting the civil rights and civil liberties of residents of the Commonwealth of Massachusetts. ACLUM works to safeguard rights of free expression and prevent discrimination, including against those who are gender non-conforming. ACLUM has submitted briefs to this Court many times, either as a party or *amicus*, including on issues related to student speech and equality. *See, e.g.*, *Doe v. Hopkinton Pub. Schs.*, 19 F.4th 493 (1st Cir. 2021); *Parker v. Hurley*, 514 F.3d 87 (1st Cir. 2008); *Pyle v. S. Hadley Sch. Comm.*, 55 F.3d 20, 22 (1st Cir. 1995). *See also* ACLU and ACLUM *amici curiae* brief in pending case *Foote v. Ludlow Sch. Comm.*, No. 23-1069.

# ARGUMENT

The District Court's determination that a preliminary injunction should not enter is reviewed for abuse of discretion. *Bl(a)ck Tea Society v. City of Boston*, 378 F.3d 8, 11 (1st Cir. 2004). Its conclusions of law are reviewed *de novo* and its findings of fact for clear error. *Id.*

The District Court erred by grounding its decision on the "invasion of rights of others" prong of *Tinker* because the Massachusetts Legislature has deemed that test

---

[5] No party's counsel authored this brief in whole or in part. No party or party's counsel contributed money that was intended to fund preparing or submitting this brief. Only amicus and its members contributed money that was intended to fund preparing or submitting this brief. Fed. R. App. P. 29(c)(5). *Amicus* submits this brief with the consent of counsel for all parties. Fed. R. App. P. 29(a)(2).

inapplicable in Massachusetts public schools, except where speech meets the definition of bullying under Mass. G.L. c. 71, § 37O, which the School does not contend applies in this case. Moreover, even if a "rights of others" analysis unrelated to bullying as defined in state law were permissible, the "feel safe" standard the District Court used here is insufficiently protective of free speech rights.

The School maintained that it acted based on both a "rights of others" analysis and on a prediction of substantial disruption, but the District Court did not reach the disruption argument, choosing to rely only on the "rights of others."  The case should be remanded to the District Court for further proceedings to determine whether the School's forecast of substantial and material disruption was reasonable.

**I.  Because the District Court erroneously relied on a "rights of others" analysis, the denial of the preliminary injunction and the entry of final judgment should be vacated and the matter remanded for further consideration under the disruption prong of *Tinker* and Mass. G.L. c. 71, § 82.**

Under Massachusetts law, schools may not restrict student speech because it invades the rights of others unless such speech qualifies as bullying. Here, the School has not advanced bullying by L.M. as a rationale for its actions. The initial decision on the preliminary injunction request as well as the entry of final judgment should therefore be vacated and the matter remanded for evaluation of the School's alternative argument that it reasonably forecast that the T-shirts would cause substantial disruption under *Tinker* and Mass. G.L. c. 71, § 82.

A.   **Massachusetts law allows schools to restrict student speech only under a disruption analysis or when it constitutes bullying under the Massachusetts Anti-Bullying Statute.**

Decided in 1969, *Tinker* established that under the First Amendment student speech at school cannot be penalized unless it causes or is reasonably forecast to cause substantial disruption, or infringes on the rights of others. Enacted in 1974, the Massachusetts student free expression statute, Mass. G.L. c. 71, § 82, St. 1974, c. 670, mandates that in Massachusetts student speech may be restricted only if it will "cause any disruption or disorder within the school."[6] In spite of *Tinker*'s indication that student speech can also be curtailed based on an "invasion of rights of others," the Massachusetts Legislature in enacting Mass. G.L. c. 71, § 82 chose not to authorize Massachusetts schools to suppress speech using that rationale.

In *Pyle*, 423 Mass. at 286-87, the Massachusetts Supreme Judicial Court, on certification from this Court, 55 F.3d 20, 22 (1st Cir. 1995), held that Mass. G.L. c. 71, § 82 authorizes restrictions on student speech only under the disruption prong of *Tinker*. It emphasized that "[o]ur Legislature is free to grant greater rights to the citizens of this Commonwealth than would otherwise be protected under the United States Constitution. The decision to do so rests squarely with the Legislature and we are not

---

[6] The statute applies to any "public secondary school." Mass. G.L. c. 71, § 82 (last paragraph). The Massachusetts Supreme Judicial Court has held that the term "secondary school" as used in Massachusetts statutes refers to a school that is intermediate between an elementary school and college. *Commonwealth v. Bell*, 442 Mass. 118, 124 (2004). Hence, Nichols Middle School is a "public secondary school."

free judicially to create new limitations." *Id.* at 287. *See also PruneYard Shopping Ctr. v. Robins*, 447 U.S. 74, 81 (1980).[7]

When the Legislature enacted the school anti-bullying statute in 2010, Mass. G.L. c. 71, § 37O, St. 2010, c. 92, § 5, it implicitly amended Mass. G.L. c. 71, § 82 to authorize some restrictions under the "rights of others" prong. *Doe v. Hopkinton Pub. Schs.*, 19 F.4th at 504, 511-12. But that extended authorization applies only to speech that qualifies as bullying under the existing statute,[8] and the School does not contend the speech at issue here amounted to bullying. Appellant's Opening Brief, Add. 12.

The District Court therefore erred in grounding its decision on the "rights of others" prong. Moreover, even if schools in Massachusetts were empowered to regulate speech under a "rights of others" analysis outside of the bullying context, the District

---

[7] In 1993, the Massachusetts Legislature enacted a version of Mass. G.L. c. 76, § 5, requiring that a public education be provided without discrimination and on equal terms to students in certain protected classes. St. 1993, c. 282. In 2011, that statute was amended expressly to include "gender identity" as a protected status. St. 2011, c. 199. Unlike the anti-bullying statute, the equal education statute does not explicitly address student speech, but it may inform the analysis of legislative intent as to when speech is or is not disruptive under Mass. G.L. c. 71, § 82. *Cf. Commonwealth v. Rendersos*, 440 Mass. 422, 433 (2003) ("We have no doubt that the Legislature intended the two statutes to work together as a 'harmonious whole' . . . .").

[8] The definition of bullying in § 37O requires "repeated use" of expression or conduct "directed at a victim" that "(i) causes physical or emotional harm to the victim . . ." or "(iii) creates a hostile environment at school for the victim; (iv) infringes on the rights of the victim at school; or (v) materially and substantially disrupts the education process or the orderly operation of a school." Section 37O(d)(3) mentions "harassment" in addition to bullying, but harassment is not defined and not covered by the requirement in (b) of what "shall be prohibited."

Court's interpretation of that prong of *Tinker* to allow regulation if schools believe a "potentially vulnerable" student might "not feel safe" is insufficiently protective of free speech rights. It turns on potential and not actual vulnerability and does not require that any such feeling be objectively reasonable. *Cf. Norris*, 969 F.3d at 25 (discussing objective reasonableness). And it leaves open the possibility that mere offense, hurt or discomfort, reframed as "not feel[ing] safe," could be used to justify restraint of constitutionally protected speech. *Id.* at 29 n. 18 (speech cannot be suppressed based on mere offense by listeners). Under such a loose test, all sorts of speech that makes some students uncomfortable might be said to make them "not feel safe," including discussions about racial injustice and structural inequality, privacy rights, the need for policing reform, or the demographics of crime. It therefore opens the door to suppression of too much speech. *Tinker*, 393 U.S. at 513-14 (suppression of speech allowed only in "carefully restricted circumstances").

Because the District Court erroneously relied on a "rights of others" rationale, it did not reach the School's argument that the T-shirts could be regulated based on a reasonable forecast of substantial disruption. The prior decisions should therefore be vacated and the case remanded for consideration under the disruption prong.

**B.    The School has the burden of establishing, based on concrete facts, that the speech caused or was reasonably forecast to cause substantial and material disruption.**

Schools may not curtail student speech because it is "merely offensive" to some listeners or might hurt the feelings of other students. *Norris*, 969 F.3d at 29 n. 18 (citing

*Tinker*, 393 U.S. at 508-09 and other cases). It is a job of schools, after all, to teach students to tolerate unpopular speech that many might find offensive as part of preparing them to function in a democratic society. *B.L.*, 141 S. Ct. at 2046.[9] Moreover, even where disruption is possible, schools should seek to prevent it through education, before or instead of suppressing speech or disciplining speakers. *See* Argument Part II, below. "[S]chools have a special interest in regulating speech that 'materially disrupts classwork or involves substantial disorder . . . .'" *Id.* at 2045 (quoting *Tinker*, 393 U.S. at 513). But such regulation can occur only where the School demonstrates concrete facts that justify an occurrence or reasonable forecast of such disruption or disorder. *Id.* at 2047-48.

Decisions from other circuits highlight the types of facts and legal considerations that may be relevant to the disruption analysis in this case. In cases in which courts have upheld schools' decisions to bar the display of particular messages on clothing or otherwise, the record has included a concrete basis for a reasonable forecast that disruption will be caused by the speech at issue, often grounded in a specific history of physical confrontation and/or physical disruption to the learning experience.

---

[9] The School here allowed L.M. to wear other T-shirts expressing political views that could be considered "offensive" by some, including one saying "Let's Go Brandon" (a euphemism for vulgarity directed at the current President), which not all schools have done. *See, e.g., D.A. v. Tri Cnty. Area Schs.*, Civil Action 1:23-cv-00423 (W.D. Mich., Complaint filed April 25, 2023). *See* J.A. 201, Second Affidavit of Heather Tucker, ¶ 11.

In *N.J. v. Sonnabend*, 37 F.4th 412, 426 (7th Cir. 2022), the Seventh Circuit emphasized its conclusions in prior cases that, while there is "no generalized 'hurt feelings' defense," schools may regulate student speech to ensure an environment that is "conducive to learning," taking into account "such factors as the age and grade level of the students to whom the speech is directed and any factors particular to the educational environment or history of the school or student body in question," including temporal factors and recent events. There, the court vacated summary judgment for a school system that had prohibited a student from wearing a T-shirt advocating the right to bear arms because the lower court decision was incorrectly based on a conclusion that the expression was categorically unprotected; it remanded the matter for reconsideration by the lower court under the substantial disruption standard. *Id.* at 426-27. The court stated:

> It's not necessary to prove "that unless the speech at issue is forbidden[,] serious consequences will *in fact* ensue." But mere speculation won't do, and there's no "generalized 'hurt feelings' defense to a high school's violation of the First Amendment rights of its students." Rather, school officials must present "facts [that] might reasonably have led school authorities to forecast substantial disruption of or material interference with school activities."

*Id.* at 426 (internal citations omitted) (emphasis in original).

The court in *N.J.* relied on its prior decision in *Nuxoll ex rel. Nuxoll v. Indian Prairie School District No. 204*, 523 F.3d 668, 676 (7th Cir. 2008), in which it held that a T-shirt worn in a high school stating "Be Happy, Not Gay" could not be restricted, in part because it was only "tepidly negative." It emphasized that "it is highly speculative that

allowing the plaintiff to wear a T-shirt that says, 'Be Happy, Not Gay' would have even a slight tendency to provoke [incidents of harassment], or for that matter to poison the educational atmosphere." *Id.* at 676.[10]

In *Hardwick ex rel. Hardwick v. Heyward*, 711 F.3d 426, 440 (4th Cir. 2013), the court held that a school was within its constitutional authority to restrict the wearing of a T-shirt displaying the Confederate flag, as well as a T-shirt protesting the restriction on the Confederate flag shirt that evoked the original message. The court emphasized that "prohibiting students from having the Confederate flag at school is not automatically constitutional." *Id.* at 436. But it concluded that the school's forecast of substantial disruption was reasonable in light of a history of racial tensions in the town in which the school was located, as well as evidence of "the Confederate flag itself ha[ving] caused problems in [the town's] schools," including "trouble" at a high school

---

[10] In *Nuxoll*, the court discussed various forms that substantial disruption might take, *id.* at 673-74, stating: "if there is a reason to think that a particular type of student speech will lead to a decline in students' test scores, an upsurge in truancy, or other symptoms of a sick school—symptoms therefore of substantial disruption—the school can forbid the speech." 523 F.3d at 674. *See also id.* at 676 ("The district judge will be required to strike a careful balance between the limited constitutional right of a high-school student to campaign inside the school against the sexual orientation of other students and the school's interest in maintaining an atmosphere in which students are not distracted from their studies by wrenching debates over issues of personal identity."). After remand, summary judgment entered for the student speakers and was affirmed on appeal. *Zamecnik v. Indian Prairie Sch. Dist. No. 204*, 636 F.3d 874 (7th Cir. 2011). *See and compare Parents Defending Educ. v. Olentangy Local Sch. Dist. Bd. of Educ.*, 2023 WL 4848509 (S.D. Ohio, July 28, 2023) (declining to enjoin school rule about students' required use of preferred pronouns) (notice of appeal filed).

prom, "commotion" in a school parking lot, a "'very tense' situation" between students at another school, and a more recent "disruption of a classroom." *Id.* at 432-33, 439. *See also B.W.A. v. Farmington R-7 Sch. Dist.*, 554 F.3d 734, 741 (8th Cir. 2009) (substantial disruption test allowed restrictions on Confederate flag and other racially targeted speech against a background of racial tensions, including threats of physical violence that caused some students to leave the school); *Barr v. Lafon*, 538 F.3d 554, 565-67 (6th Cir. 2008) (upholding a restriction on the display of the Confederate flag based on a reasonable forecast of material and substantial disruption to schoolwork and school discipline grounded in history of racially motivated physical fights, threats of race-based violence, and an increase of absenteeism prior to the ban on the Confederate flag); *West v. Derby Unified Sch. Dist. No. 260*, 206 F.3d 1358, 1366-67 (10th Cir. 2000) (discipline of a middle school student who drew a Confederate flag at school upheld under substantial disruption, based on a history of significant racial tensions at the middle school, high school, and elsewhere in the district).

A history of past tensions will not justify a substantial disruption forecast if the school cannot prove a sufficiently tight nexus between those past tensions and the displayed message. Thus, in *Sypniewski v. Warren Hills Regional Board of Education*, 307 F.3d 243, 255-56, 264 (3d Cir. 2002), the Court held that a student was likely to succeed in his challenge to being denied the right to wear a T-shirt referencing a "redneck." Although there was a relevant history of racial tensions in the school, there was insufficient evidence that the term "redneck" raised the specter of race or that there

was a link between the term and past racial hostility.[11]

Because the District Court focused on the wrong inquiry, further consideration is warranted on remand, both with regard to the request for preliminary injunction and final judgment, employing the substantial disruption analysis authorized by Mass. G.L. c. 71, § 82 and *Tinker*.

## II.    Schools can express and promote a message of inclusivity, equality, and respect without undermining their authority to regulate student speech that expresses a contrary view and is reasonably forecast to cause substantial disruption.

Schools can and should take actions to ensure that all students—including those from historically marginalized groups—feel welcome at school. This is consistent with schools' obligations encompassed by Mass. G. L. c. 76, § 5 and related laws. For instance, schools can hold Pride celebrations where individual students are not required to endorse the message. School personnel can also state their disagreement with and non-endorsement of student messages of intolerance or exclusion. Schools can hold forums to educate students about the history and realities of discrimination, so that

---

[11] The *Sypniewski* Court also concluded that the school's speech policy was overbroad to the extent it prevented expression that caused "ill will" but not to the extent it prevented "racially provocative harassment by name calling." 307 F.3d at 264-65. While it is not yet clear whether the School's application of its dress code in this instance violated L.M.'s free speech rights, the language of the dress code is overbroad. For example, it prohibits "hate speech" without defining what qualifies as such and without clearly requiring that such speech cause or be reasonably forecast to cause substantial and material disruption or interference. *See id.* at 263 ("ill will" portion of policy could not fairly be read to require disruption forecast).

students can be better educated and not unintentionally engage in speech that may cause harm, pain and disruption for their fellow students.

L.M. implies that his speech must be allowed in part because the School engages in its own expression to create a welcoming and supportive environment for LGBTQ+ students and some students choose to express their own support for that same message. Appellant's Opening Brief, p. 44. But L.M.'s speech rights are independent of the school's own speech. *See, e.g.*, *Shurtleff v. City of Boston*, 142 S. Ct. 1583, 1589-90 (2022) (and cases cited discussing government speech doctrine).

That schools may engage in such speech and facilitation, and that some students voluntarily and without coercion choose to endorse a similar view, has nothing to do with whether L.M.'s speech can be restricted.[12] If his speech is substantially disruptive, it can be restricted. If it is not disruptive, it cannot. *Hardwick*, 711 F.3d at 443 ("*Tinker* therefore stands for the proposition that school officials may not target a specific viewpoint unless they can predict that that speech would be likely to cause a substantial disruption[.]"); *Morgan v. Swanson*, 659 F.3d 359, 379-80 (5th Cir. 2011) (no categorical

---

[12] Issues of coercion with regard to public school students deserve special consideration. *Compare Kennedy,* 142 S. Ct. at 2430-31 (majority holding no coercion from football coach praying on football field after high school game) *with id.* at 2434, 2443-45 (dissent expressing concerns about vulnerability of students to coercion). L.M. does not contend that students were coerced into affirmatively endorsing the school's message. L.M. also does not contend that the school allowed disruptive speech by students with viewpoints different than his on the issue of gender identity. So those issues are not presented in this case.

rule against viewpoint discrimination in public schools where the substantial disruption test applies); *B.W.A.*, 554 F.3d at 740-41 (holding same). That is all that matters under the First Amendment and Mass. G.L. c. 71, § 82.

## CONCLUSION

The District Court's decision on the preliminary injunction and the entry of final judgment based on an invasion of rights of others analysis should be vacated and the matter remanded for rigorous consideration of whether the School can meet its burden of establishing that it reasonably forecast that L.M.'s T-shirts would cause substantial and material disruption.

Respectfully submitted,

*/s/ Ruth A. Bourquin*
Ruth A. Bourquin (1st Cir. No. 13282)
Kirsten V. Mayer (1st Cir. No. 71971)
Rachel E. Davidson (1st Cir. No. 1197867)
AMERICAN CIVIL LIBERTIES UNION
  FOUNDATION OF MASSACHUSETTS, INC.
One Center Plaza, Suite 850
Boston, MA 02108
617.482.3170
rbourquin@aclum.org
kmayer@aclum.org
rdavidson@aclum.org

Counsel for *Amicus Curiae*
The ACLU of Massachusetts, Inc.

Dated: October 2, 2023

16

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because, excluding parts of the brief exempted by Fed. R. App. P. 32(f), this document contains 4,435 words.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word with Garamond in 14-point type.


Dated: October 2, 2023                    */s/ Ruth A. Bourquin*
                                          Ruth A. Bourquin

**CERTIFICATE OF SERVICE**

I certify that on October 2, 2023, the foregoing Brief *Amicus Curiae* was filed electronically through the Court's CM/ECF system. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system.

Dated: October 2, 2023                                    */s/ Ruth A. Bourquin*
                                                          Ruth A. Bourquin