Nos. 23-1535, 23-1645

# United States Court of Appeals
## for the
# First Circuit

L.M., a minor by and through his father and stepmother
and natural guardians, Christopher and Susan
Morrison,

*Plaintiff-Appellant,*

v.

TOWN OF MIDDLEBOROUGH, MASSACHUSETTS, *et al.*,

*Defendants-Appellees.*

On appeal from the United States District Court
for the District of Massachusetts, Eastern Division,
Honorable Indira Talwani, Presiding

## BRIEF OF *AMICUS CURIAE*
## FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
## IN SUPPORT OF PLAINTIFF AND REVERSAL

ABIGAIL E. SMITH
FOUNDATION FOR INDIVIDUAL
 RIGHTS AND EXPRESSION
510 Walnut St.
Suite 1250
Philadelphia, PA 19106

ROBERT CORN-REVERE*
FOUNDATION FOR INDIVIDUAL
 RIGHTS AND EXPRESSION
700 Pennsylvania Avenue, SE
Suite 340
Washington, DC 20003
(215) 717-3473
bob.corn-revere@thefire.org

*Counsel of Record

*Attorneys for* Amicus Curiae *Foundation for Individual Rights and Expression*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, counsel for *amicus* certifies that (1) *amicus* does not have any parent corporations, and (2) no publicly held companies hold 10% or more of the stock or ownership interest in *amicus*.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ iv

INTEREST OF *AMICUS CURIAE* ........................................................... 1

SUMMARY OF ARGUMENT ................................................................... 2

ARGUMENT ............................................................................................ 5

    I.    Schools cannot elevate the undefined "rights of others" over a student's right to express his beliefs. .......................................................................................... 5

        A.    *Tinker* does not allow courts to elevate the "rights of others" over a student's right to speak his conscience. ....................................... 5

            1.    The invasion of the rights of others exception is extremely narrow. ............................. 6

            2.    "Invading the rights of others" necessarily involves targeting specific individuals............................................... 8

        B.    A t-shirt stating "There are only two genders"—or a censored version of the same—does not "invade the rights of others" under *Tinker*. ............................................... 12

CONCLUSION ........................................................................................ 15

# TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*303 Creative LLC v. Elenis*, 143 S. Ct. 2298 (2023) ................................. 14

*Blackwell v. Issaquena Cnty. Bd. of Educ.*,
   363 F.2d 749 (5th Cir. 1966) ........................................................ 6, 7, 13

*Burnside v. Byars*,
   363 F.2d 744 (5th Cir. 1966) ........................................................ 6, 7, 13

*Doe v. Hopkinton Pub. Schs.*,
   19 F.4th 493 (1st Cir. 2021) .................................................. 4, 10, 11, 13

*Fellowship of Christian Athletes v. San Jose
   Unified Sch. Dist. Bd. of Educ.*, No. 22-15827,
   2023 WL 5946036 (9th Cir. Sept. 13, 2023) ......................................... 6

*Glowacki ex rel. D.K.G. v. Howell Pub. Sch. Dist.*,
   No. 2:11-CV-15481, 2013 WL 3148272
   (E.D. Mich. June 19, 2013) ................................................................. 11

*L.M. v. Town of Middleborough*,
   No. 1:23-CV-11111-IT, 2023 WL 4053023
   (D. Mass. June 16, 2023) ........................................................ 3, 5, 12, 14

*Mahanoy Area Sch. Dist. v. B.L.*,
   141 S. Ct. 2038 (2021) ............................................................... passim

*Matal v. Tam*,
   582 U.S. 218 (2017) ............................................................................ 15

*Norris ex rel. A.M. v. Cape Elizabeth Sch. Dist.*,
   969 F.3d 12 (1st Cir. 2020) ......................................................... passim

*Saxe v. State Coll. Area Sch. Dist.*,
   240 F.3d 200 (3d Cir. 2001) ............................................................. 7, 8

*Tinker v. Des Moines Indep. Cmty. Sch. Dist.*,
   393 U.S. 503 (1969) ................................................................... passim

## INTEREST OF *AMICUS CURIAE*[1]

The Foundation for Individual Rights and Expression (FIRE) is a nonpartisan, nonprofit organization dedicated to defending the individual rights of all Americans to free speech and free thought—the essential qualities of liberty. Since 1999, FIRE has successfully defended individual rights through public advocacy, strategic litigation, and participation as *amicus curiae* in cases that implicate expressive rights under the First Amendment. *See, e.g.*, Brief of *Amici Curiae* FIRE, NCAC, and Comic Book Legal Defense Fund in Supp. of Resp'ts, *Mahanoy Area Sch. Dist. v. B.L.*, 141 S. Ct. 2038 (2021); Brief of *Amicus Curiae* FIRE in Supp. of Pls.-Appellants, *Doe v. Hopkinton Pub. Schs.*, 19 F.4th 493 (1st Cir. 2021).

FIRE has a direct interest in this case because FIRE frequently advocates on behalf of K-12 students who were punished by their schools for their First Amendment-protected expression. *See, e.g.*, First Am. Complaint, *I.P. v. Tullahoma City Schs.*, Case No. 4:23-cv-26, Dkt. No.

---

[1] No counsel for a party authored this brief in whole or in part. Further, no person, other than *amicus*, its members, or its counsel contributed money intended to fund preparing or submitting this brief. All parties consent to the filing of this brief.

36 (E.D. Tenn. Sept. 21, 2023). The Supreme Court's landmark ruling in *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506 (1969) established that neither students nor teachers "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." Although the Court recognized limited exceptions to this broad ruling "in light of the special characteristics" of the school environment, *id.*, too often the exceptions are treated as if they were the rule. That is the case here. FIRE files this brief in support of Petitioner to explain that *Tinker's* limited exceptions cannot be expanded to cover a student's untargeted political statement, no matter how unpopular that statement may be.

## SUMMARY OF ARGUMENT

Just two terms ago, the Supreme Court reaffirmed *Tinker*'s baseline rule that that "students do not 'shed their constitutional rights to freedom of speech or expression,' even 'at the schoolhouse gate.'" *Mahanoy Area Sch. Dist. v. B.L.*, 141 S. Ct. 2038, 2044 (2021) (quoting *Tinker*, 393 U.S. at 506). In *Tinker*, the Court held that student speech is presumptively protected *unless* it falls into two narrow categories: It either substantially disrupts the school environment or it invades the rights of others on campus. 393 U.S. at 513. But over the years, many

courts have run *Tinker* in reverse. They assume student speech can be restricted unless a student plaintiff can convince the court it is *not* disruptive or invasive of others' rights. This approach gets the First Amendment backwards.

That is what happened here. L.M.'s school prohibited him from wearing a non-obscene, non-vulgar shirt stating, "There are only two genders," because the message "would cause students in the LGBTQ+ community to feel unsafe." *L.M. v. Town of Middleborough*, No. 1:23-CV-11111-IT, 2023 WL 4053023, at *3 (D. Mass. June 16, 2023). The school even banned him from wearing a shirt saying, "There are [CENSORED] genders," arguing it still communicated the same "unsafe" message. *Id.* The district court held that suppressing this general, untargeted political message was permissible under *Tinker* because it could make other students feel "invalid" and thus invade their right "to attend school without being confronted by messages attacking their identities." *Id.* at *6.

But the discomfort, or even personal offense, of one student does not meet *Tinker's* "invasion of the rights of others" exception. In *Mahanoy*, the Supreme Court affirmed that *Tinker* permits the

regulation of "serious or severe bullying or harassment targeting particular individuals," but not generalized statements otherwise fully protected by the First Amendment. *Mahanoy*, 141 S. Ct. at 2045. This circuit has said that even more expressly, holding repeatedly that student speech can be punished only if the school reasonably determined "that the student speech targeted a specific student." *Norris ex rel. A.M. v. Cape Elizabeth Sch. Dist.*, 969 F.3d 12, 29, 31 (1st Cir. 2020); *accord Doe v. Hopkinton Pub. Schs.*, 19 F.4th 493, 506 (1st Cir. 2021) ("A general statement of discontent is vastly and qualitatively different from bullying that targets and invades the rights of an individual student.").

Despite these controlling precedents, the district court held that the government's interest in addressing discriminatory harassment justified censoring untargeted, non-harassing student speech. If the district court's ruling is allowed to stand, students in Middleborough will learn the wrong lesson: If your speech is unpopular, the government can silence you. This Court should reverse.

## ARGUMENT

### I.   Schools cannot elevate the undefined "rights of others" over a student's right to express his beliefs.

Schools cannot censor students' speech merely because it offends some listener, even in the interest of nondiscrimination. Nothing in *Tinker* elevates the rights of some students "to attend school without being confronted by messages attacking their identities" over another student's right to express his beliefs, particularly when the latter student's expression does not disrupt school operations and is not targeted at a particular individual. *Middleborough*, 2023 WL 4053023, at *6.

#### A.   *Tinker* does not allow courts to elevate the "rights of others" over a student's right to speak his conscience.

Banning or punishing student political speech under *Tinker*'s "invasion of the rights of others" exception is a dangerous and unconstitutional expansion far beyond any carveout contemplated in *Tinker*. To fall within the exception, it is not enough that the speech is offensive or even that the speech violates a school discrimination policy. "Anti-discrimination laws and policies serve undeniably admirable goals, but when those goals collide with the protections of the Constitution, they must yield—no matter how well-intentioned." *Fellowship of Christian*

*Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, No. 22-15827, 2023 WL 5946036, at *23 (9th Cir. Sept. 13, 2023). Both *Tinker* and other cases, including from this Circuit, make clear that this exception does *not* allow the government to elevate the rights of others over a student's own First Amendment right to speak his mind, except in very rare circumstances.

### 1.    The invasion of the rights of others exception is extremely narrow.

*Tinker* and the Fifth Circuit cases it relied upon demonstrate that the Supreme Court intended "invasion of the rights of others" to be limited to extreme cases of physical intimidation and student-on-student compelled speech, not unpopular t-shirts. *Tinker* defined what it meant by invading, or "colliding with the rights of others," in express reference to two Fifth Circuit cases: *Blackwell v. Issaquena County Board of Education*, 363 F.2d 749 (5th Cir. 1966), and *Burnside v. Byars*, 363 F.2d 744 (5th Cir. 1966). *See Tinker*, 393 U.S. at 513 (citing *Burnside*, 363 F.2d at 749, and *Blackwell*, 363 F.2d at 749). Those two cases, decided on the same date by the same court, both involved segregated schools that banned their students from wearing "freedom buttons." *Blackwell*, 363 F.2d at 752; *Burnside*, 363 F.2d at 747. In *Burnside*, the Fifth Circuit

held that the school in *Burnside* must allow the buttons to be worn because there was no evidence that the students "caus[ed] a commotion or disrupt[ed] classes." *Id*. at 748.

But the same court held in *Blackwell* that the school did *not* violate the First Amendment by banning the buttons, because the students who wore them caused serious disruption and collided with the rights of other students by physically intimidating them and forcing them, against their will, to voice a political message. *Blackwell*, 363 F.2d at 754. For example, some button-wearing students "accosted other students by pinning the buttons on them even though they did not ask for one. One of the students tried to put a button on a younger child who began crying." *Id*. at 751. Later, students "tr[ied] to pin [buttons] on anyone walking in the hall," including "other students who did not wish to participate." *Id*. at 752–53. So the school could prohibit student speech that resulted in such extreme "collision with the rights of others." *Id*. at 754.

Later courts have affirmed the view that invading the rights of others requires something far more serious than "that the speech is merely offensive to some listener." *Saxe v. State Coll. Area Sch. Dist.*, 240 F.3d 200, 217 (3d Cir. 2001) (Alito, J.). In *Saxe*, for example, the Third

Circuit held that an anti-harassment policy violated the First Amendment when it prohibited a student from expressing his belief that "homosexuality is a sin" in school. *Id.* at 203. The court held that for an anti-harassment policy to survive First Amendment scrutiny, it must require some "threshold showing of severity or pervasiveness." *Id.* at 217. Otherwise, the policy "could conceivably be applied to cover any speech about some enumerated personal characteristics the content of which offends someone." *Id. Saxe* also noted that some courts had held the invasion of the rights of others prong to be so narrow as to cover "only independently tortious speech like libel, slander or intentional infliction of emotional distress." *Id.*

### 2.     "Invading the rights of others" necessarily involves targeting specific individuals.

This court and the Supreme Court require that a student's speech specifically target another student or teacher in order to show it invades the rights of others under *Tinker.* For example, in *Mahanoy*, the Supreme Court's most recent case to address this issue, the Court listed examples of off-campus speech that *could* be regulated by schools. Those included "serious or severe bullying or harassment *targeting particular individuals*" and "threats *aimed at* teachers or other students." *Mahanoy*,

141 S. Ct. at 2045 (emphases added). The Court contrasted that regulable behavior with the speech of the plaintiff cheerleader, who posted on Snapchat "Fuck school fuck softball fuck cheer fuck everything." *Id.* at 2043. The language at issue was vulgar and distressed some classmates, but the Court held that the school could not punish her for it because it did not "*target* any member of the school community with vulgar or abusive language." *Id.* at 2047 (emphasis added).

This Circuit expressly endorsed a targeting requirement in *Norris*, 969 F.3d 12. *Norris* dealt with a similar fact pattern to the one in this case: A high school student was punished for posting a sticky note with a controversial statement that did not target a specific student, on the grounds that it contributed to the bullying of another student (that the posting student did not participate in) and thus invaded that student's rights. *Id.* at 28–29.

*Norris* held that "for a school to rely on [bullying as a] basis for restricting student speech, there must be a reasonable basis for the administration to have determined both that the student speech *targeted a specific student* and that it invaded that student's rights." *Id.* at 29 (emphasis added). In addition to targeting, the court held that the school

must "establish a [causal] link between [the posting student's] protected speech and the harm [the bullied student] suffered." *Id.* at 31. Because the school failed to prove that the sticky note either targeted the bullied student or was the direct cause of the bullying, the school could not punish the posting student under the invasion prong of *Tinker*. *Id.* at 32–33.

The First Circuit reaffirmed its targeting and causation requirement in *Hopkinton*, 19 F.4th 493. *Hopkinton* focused specifically on the idea that general statements could constitute bullying sufficiently targeted to invade the rights of others. *Id.* at 503–04. The court contrasted the facts of *Hopkinton*, where hockey players posted off-campus Snapchats about a specific teammate, with the Supreme Court's holding in *Mahanoy Area School District*, where a cheerleader posted off-campus snapchats "not directed at any individual." *Id.* at 506. *Hopkinton* held only the former, targeted speech invaded the rights of others under *Tinker*.

"A general statement of discontent is vastly and qualitatively different from bullying that targets and invades the rights of an individual student." *Id.* (citing *Mahanoy*, 141 S. Ct. at 2045, and *Norris*,

969 F.3d at 29). The court further held that for a school to punish a student's speech under the invasion prong of *Tinker*, "there must be a causal connection between their speech and the bullying that invaded" a specific student's rights. *Id.*

Other courts have similarly applied this targeting requirement to student speech related to LGBT rights. For example, in Michigan, a district court held that a student saying "I don't believe in gays" did not invade the rights of others under *Tinker* because his statement did not "threaten[], name[], or target[] a particular individual." *Glowacki ex rel. D.K.G. v. Howell Pub. Sch. Dist.*, No. 2:11-CV-15481, 2013 WL 3148272, at *8 (E.D. Mich. June 19, 2013). The court opined that invading the rights of others would require "some sort of threat or direct confrontation" that was absent. *Id.* Because the student's comment "did not identify particular students for attack but simply expressed a general opinion— albeit one that some may have found offensive—on the topic of homosexuality," the court held that this statement "did not impinge upon the rights of other students." *Id.*

**B.    A t-shirt stating "There are only two genders"—or a censored version of the same—does not "invade the rights of others" under *Tinker*.**

"In order for the State in the person of school officials to justify prohibition of a particular expression of opinion, it must be able to show that its action was caused by something more than a mere desire to avoid the discomfort and unpleasantness that always accompany an unpopular viewpoint." *Tinker*, 393 U.S. at 509. But here, Middleborough has little evidence that even general unpleasantness ensued, let alone a more targeted invasion of a specific student's rights.

A student t-shirt making a general, non-obscene statement on gender identity does not invade the rights of others and thus cannot be punished under *Tinker*. It is undisputed that L.M.'s t-shirt did not target any specific individuals. Indeed, while a vague reference was made to "complaints" (and it is unclear whether those were from students or staff), the district court did not identify a single student at L.M.'s school who was affected by the words on his t-shirt, let alone felt singled out or targeted by it. *Middleborough*, 2023 WL 4053023, at *2. That necessarily fails this court's test set forth in *Norris*, which requires that for a school to restrict a student's speech based on bullying, the school must have

reasonably determined "both that the student speech targeted a specific student and that it invaded that student's rights." *Norris*, 969 F.3d at 29.

It is also a far cry from the "serious or severe bullying or harassment targeting particular individuals" envisioned by the Supreme Court in *Mahanoy*, 141 S. Ct. at 2045, or by the Fifth Circuit in *Blackwell* and *Burnside*. In *Blackwell*, the students invaded the rights of other students by physically intimidating younger students and literally compelling them to speak contrary to their own beliefs. *See Blackwell*, 363 F.2d at 753, 754. But *Burnside* lacked similar facts, so there was no First Amendment violation. *Burnside*, 363 F.2d at 748. The parallel here would be if L.M. had somehow forced gender nonconforming students to wear a "two genders" t-shirt. But in merely wearing a shirt that expressed his own viewpoint, L.M. did not come anywhere near the threshold established in *Blackwell* and *Burnside*.

Nor can Middleborough prove a "causal connection between [L.M.'s] speech and the bullying that invaded" the rights of any student at his school, as this circuit requires. *Hopkinton*, 19 F.4th at 506. The district court explained at length that many members of the LGBTQ+ community in L.M.'s school felt bullied in June 2022, long before L.M. first wore his

"two genders" t-shirt in March 2023. *Middleborough*, 2023 WL 4053023, at *1–2. To the extent gender nonconforming and other "potentially vulnerable students" in Middleborough do "not feel safe," Middleborough's own evidence proves that the blame cannot be laid at L.M.'s door. *Id.* at *6.

L.M.'s t-shirt undoubtedly offended at least some, and perhaps it was even intended for that purpose. The black armbands worn by students protesting the Vietnam War in *Tinker* undoubtedly offended some disagreeing students and staff members as well. *Tinker*, 393 U.S. at 518, 524 (Black, J., dissenting) (noting that wearing black armbands injected "the highly emotional subject of the Vietnam war" into the school and "call[ed] attention to the wounded and dead of the war, some of the wounded and the dead being their friends and neighbors"). But absent more, the First Amendment and *Tinker* "protect[] an individual's right to speak his mind regardless of whether the government considers his speech sensible and well intentioned or deeply misguided, and likely to cause anguish or incalculable grief." *303 Creative LLC v. Elenis*, 143 S. Ct. 2298, 2312 (2023) (cleaned up). It is basic law that the government cannot justify burdening speech by "pointing to the offensiveness of the

speech to be suppressed." *Matal v. Tam*, 582 U.S. 218, 250 (2017) (Kennedy, J., concurring).

As the Supreme Court stated in *Tinker*: "Any departure from absolute regimentation may cause trouble. Any variation from the majority's opinion may inspire fear. Any word spoken, in class, in the lunchroom, or on the campus, that deviates from the views of another person may start an argument or cause a disturbance. But our Constitution says we must take this risk." *Tinker*, 393 U.S. at 508. This court should reverse.

## CONCLUSION

For the foregoing reasons, the district court should be reversed.

Dated: October 2, 2023    /s/ Robert Corn-Revere

ROBERT CORN-REVERE*
FOUNDATION FOR INDIVIDUAL
  RIGHTS AND EXPRESSION
700 Pennsylvania Ave., SE
Suite 340
Washington, DC 20003
(215) 717-3473
bob.corn-revere@thefire.org

*Counsel of Record

## Certificate of Compliance With Type-Volume Limit

1. This document complies with the word limit of Fed. R. App. P. 29(a)(5) because, excluding the parts of the document exempted by the Fed. R. App. P. 32(f): this document contains 2,906 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because: this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook.

Date: October 2, 2023            /s/ *Robert Corn-Revere*
                                 LEAD ATTORNEY
                                 FOUNDATION FOR INDIVIDUAL
                                   RIGHTS AND EXPRESSION

## CERTIFICATE OF SERVICE

The undersigned certifies that on October 2, 2023 an electronic copy of the Foundation for Individual Rights and Expression Brief of *Amicus Curiae* was filed with the Clerk of the Court for the United States Court of Appeals for the First Circuit using the CM/ECF system. The undersigned also certifies all parties in this case are represented by counsel who are registered CM/ECF users and that service of the brief will be accomplished by the CM/ECF system.

Dated: October 2, 2023                    /s/ Robert Corn-Revere

ROBERT CORN-REVERE*
FOUNDATION FOR INDIVIDUAL
 RIGHTS AND EXPRESSION
700 Pennsylvania Ave., SE
Suite 340
Washington, DC 20003
(215) 717-3473
bob.corn-revere@thefire.org

*Counsel of Record*