C.A. Nos. 23-1535, 23-1645

---

# UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

L.M., a minor by and through his father and Stepmother and natural guardians,
Christopher and Susan Morrison,

Plaintiff-Appellant

V.

Town of Middleborough, Massachusetts; Middleborough School Committee;
Carolyn J. Lyons, Superintendent, Middleborough Public Schools, in her official
capacity; Heather Tucker, Acting Principal, Nicholas Middle School,
in her official capacity,

Defendants-Appellees

---

On Appeal from a decision of the United States District Court
for the District of Massachusetts, Eastern Division
Case No. 1:23-cv-11111-IT

---

# BRIEF OF DEFENDANTS–APPELLEES

---

Deborah I. Ecker, C.A. No. 60290
Gregg J. Corbo, C.A. No. 78709
KP Law, P.C.
101 Arch Street, 12th Floor
Boston, Massachusetts 02110
(617) 654-1714
decker@k-plaw.com
gcorbo@k-plaw.com

# **TABLE OF CONTENTS**

Page

Table of Authorities ................................................................. 3

Statement of the Issue Presented for Review.......................... 5

Statement of the Case.............................................................. 6

Summary of the Arguments.................................................... 13

Argument................................................................................ 19

    I.    Plaintiff's Messages Were not Protected While at NMS ........ 19

        a.  Defendants Enforcement of the Dress Code Prohibiting Plaintiff from Wearing the T-Shirts While at School Did Not Violate Plaintiff's First Amendment Rights Because the Prohibition Was Undertaken to Protect the Invasion of Rights of Other Students to a Safe and Secure Educational Environment ................................................. 22

        b.  Defendants Enforcement of the Dress Code Prohibiting Plaintiff from Wearing the T-Shirt Using Tape to Cover Part of the Offending Message Did not Violate Plaintiff's First Amendment Rights Because the Taped T-Shirt Did Not Merely Protest Censorship but Conveyed the Very Message that Invaded the Rights of Other Students ....... 31

    II.   Defendants Reasonably Forecasted that Plaintiff's T-Shirts Would Materially and Substantially Disrupt the Work and Discipline of the School ....................................................... 32

    III.  The NMS Dress Code is Not Facially Vaque or Overly Broad ...................................................................................... 37

Conclusion ……………………………………………………... 42

## <u>TABLE OF AUTHORITIES</u>

<div align="right"><b><u>Page(s)</u></b></div>

<u>Cases</u>

<u>A.M. ex rel. McAllum v. Cash</u>, 585 F.3d 214, 224-225 (5th Cir. 2009)
  (quoting, <u>Women's Medical Ctr. of N.W. Houston v. Bell</u>, 248 F.3d 411,
  421 (2001))...................................................................................................... 37

<u>Barr v. Lafon</u>, 538 F.3d 554, 568 (6th Cir. 2008) (quoting, <u>Lowery v.
  Euverard</u>, 497 F.3d 584, 591-2 (6th Cir. 2007)) .................................................. 35

<u>Bethel School Dist. No. 403 v. Fraser</u>, 478 U.S. 675, 686 (1986)
  (quoting, <u>New Jersey v. T.L.O.</u>, 469 U.S., at 340, 105 S.Ct., at 742) ............... 38

<u>Boroff v. Van Wert City Bd. of Educ.</u>, 220 F.3d 465 (6th Cir. 2000),.................. 28

<u>Boucher v. School Board of  School District of Greenfield</u>, 134 F. 3d 821,
  827-828 (7th Cir. 1998) ....................................................................................... 33

<u>Brandt v. Bd. of Educ.</u>, 480 F.3d 460, 467 (7th Cir. 2007) ................................... 20

<u>Chandler v. McMinnville School Dist.</u>, 978 F.2d 524, 530 (9th Circ. 1992),
  (quoting, <u>Karp v. Becken</u>, 477 F.2d 171, 175 (9th Cir. 1973)).......................... 36

<u>Doe v. Hopkinton Public Schools</u>, 19 F.4[th] 493 (1st Cir. 2021)............................ 19

<u>Foote v. Town of Ludlow</u>, 2022 WL 18356421 (Civil Action No. 22030041-
  MGM, Slip Copy (2022) ................................................................................. 23

<u>Grayned v. City of Rockford</u>, 408 U.S. 104, 108–09, 92 S.Ct. 2294,
  33 L.Ed.2d 222 (1972). ...................................................................................... 37

<u>Grimm v. Gloucester County School Board</u>, 972 F.3d 586 (4th Cir. 2020),
  citing, <u>Bostock v. Clayton County</u>,  590 U.S. 140 S. Ct. 1731 (2020)....... 24, 25

<u>Harper v. Poway Unified School District</u>, 445 F.3d 1166, 1178
  (9th Cir. 2006).............................................................................................. 17, 26

Houlton Citizens' Coalition v. Town of Houlton, 175 F.3d 178, 184
(1st Cir. 1999) ................................................................................ 33

N.J. by Jacob v. Sonnabend, 37 F.4th 412 (7th Cir. 2022) ...................................... 20

Newsom v. Albermarle County School Bd., 354 F.3d 249 (4th Cir. 2003) .......... 20

Norris ex rel. A.M. v. Cape Elizabeth Sch. Dist., 969 F.3d 12, 30
(1st Cir. 2020) ................................................................................ 19

Nuxoll ex rel. Nuxoll v. Indian Prairie School Dist. #204, 523 F.3d 668
(7th Cir. 2008) .......................................................................... 21, 33

Osediacz v. City of Cranston, 414 F.3d 136, 140-41 (1st Cir. 2005). .................. 37

Sapp v. School Bd. of Alachua County, Fla., 2011 WL 5084647
(N.D.Fla. 2011), ............................................................................ 27

Scott v. School Bd. of Alachua County, 324 F.3d 1246 (11th Cir. 2003) ...... 27, 36

Taylor v. Roswell Indep. Sch. Dist., 713 F.3d 25, 38, 38 n. 11 (10th Cir.2013) ... 33

Tinker v. U.S., 393 U.S. 503 (1969) ............................................................. 19, 20

West v. Derby Unified Sch. Dist. No. 260, 23 F.Supp.2d 1223, 1233–34
(D.Kan.1998). ................................................................................ 27

## Statutes

G. L. c. 71, § 37O ................................................................................ 7
G.L. c. 76, § 5 ................................................................................... 7

## <u>STATEMENT OF THE ISSUES PRESENTED FOR REVIEW</u>

1.    Whether a judge of the District Court (Talwani, J.) correctly found that Defendants-Appellees enforcement of a school dress code that prohibits students from using speech or imagery to target groups based on race, ethnicity, gender, sexual orientation, gender identity, religious affiliation or any other classification (the "Dress Code"), to prohibit Plaintiff-Appellant from wearing a t-shirt with the message "THERE ARE ONLY TWO GENDERS" while at school did not violate Plaintiff's First Amendment rights because the prohibition was undertaken to prevent the invasion of rights of other students to a safe and secure educational environment.

2.    Whether a judge of the District Court (Talwani, J.) correctly found that Defendants-Appellees enforcement of the Dress Code prohibiting Plaintiff-Appellant from wearing the t-shirt using tape to cover part of the offending message did not violate Plaintiff's First Amendment rights because the taped t-shirt did not merely protest censorship but conveyed the same message that invaded the rights of the other students.

3.    Whether Defendants-Appellees reasonably forecasted that Plaintiff-Appellant's t-shirts would materially and substantially disrupt the work and discipline of the school such that enforcement of the Dress Code to prohibit the offending shirts did not violate Plaintiff's First Amendment Rights.

4.      Whether a judge of the District Court (Talwani, J) correctly found that the Dress Code was not facially vague or overly broad where the Dress Code does not threaten discipline for a violation of the Dress Code that has not been specifically identified by the school as improper.

## STATEMENT OF THE CASE[1]

In March 2023, Plaintiff-Appellant L. M. ("Plaintiff" or "L.M.") was a seventh-grade student at the John T. Nicholas Middle School ("NMS") in the Town of Middleborough, Massachusetts.  (R.A. 0020). Carolyn J. Lyons ("Superintendent") is the Superintendent of the Middleborough Public Schools. (R.A. 0065). Heather Tucker ("Principal") at all relevant times was the Acting Principal of NMS.  (R.A. 0085). The NMS Student and Family Handbook ("Handbook"), contains a Dress Code that provides in part that clothing worn by students "must not state, imply, or depict hate speech or imagery that target groups based on race, ethnicity, gender, sexual orientation, gender identity, religious affiliation or any other classification." (R.A. 0099, 0151-0152).

The Commonwealth of Massachusetts recognizes gender identity as a personal characteristic deserving of protection from discrimination.  On July 1, 2012, An Act Relative to Gender Identity (Chapter 199 of the Acts of 2011) became effective in Massachusetts and amended several Massachusetts statutes

---

[1] The Record Appendix filed by Plaintiff-Appellant is cited herein as "R.A. [page]."

prohibiting discrimination based on specified categories to include discrimination on the basis of gender identity. Among the statutes amended was G.L. c. 76, § 5 that prohibits discrimination based on gender identity against students who enroll in or attend public schools.  In June 2012, the Massachusetts Board of Elementary and Secondary Education when adopting the regulations to reflect the broadened student anti-discrimination provision of G.L. c. 76, § 5 directed the Department of Elementary and Secondary Education ("DESE") to provide guidance to school districts to assist in implementing the gender identity provision recognizing that all students need a safe and supportive environment to progress academically and developmentally.  The guidance helped school district administrators take steps to create a culture in which transgender and gender nonconforming students feel safe, supported, and fully included, and to meet each school's obligations to provide equal educational opportunities to all students. (R.A. 0102, 0190-0198). The Massachusetts school bullying statute, G. L. c. 71, § 37O, recognizes that certain students are more vulnerable to becoming targets of bullying or harassment based on actual or perceived differentiating characteristics, including gender identity or expression and prohibits bullying on school grounds and at school sponsored and related activities, requiring schools to develop anti-bullying plans that recognize the vulnerability of certain students.

The student population at NMS is between ten and fourteen years old and despite the young age of students, NMS has an active LGTBQ+ community who regularly attend meetings of the Gay Straight Alliance (GSA) club.  The GSA has over 20 members and typically meets on a monthly basis. The GSA is a student-run organization that unites LGBTQ+ and allied youth to build community and organize around issues impacting them. (R.A. 0102, 0204). Student survey data collected in June 2022, shows over twenty individual student comments about perceived bullying at school, feeling unwelcome at school, and expressing specific concerns about how the LGBTQ+ population is treated at school.  (R.A. 0102). The Superintendent and Principal are aware of several NMS students who have attempted to commit suicide or have had suicidal ideations in the past few years, including members of the LGBTQ+ community.  These situations have frequently cited LGBTQ+ status and treatment as a major factor. In July 2022, one NMS student committed suicide.  (R.A. 0103, 0204).

On March 21, 2023, Plaintiff wore a t-shirt to NMS with the message, "There Are Only Two Genders," a message that is inherently exclusionary, diminishing and harassing to members of the LGBTQ+ community at NMS and which in essence tells transgender and gender nonconforming students that their gender identity is invalid and does not exist. (R.A. 0100, 0200, 0210). Against the backdrop of their own personal knowledge of the LGBTQ+ students at NMS, the

age of the students at NMS, documented studies, state statutes and regulations and DESE guidance, Defendants reasonably determined that the message on Plaintiff's t-shirt would negatively impact transgender and gender non-conforming students and that it fostered a culture in which transgender and gender non-conforming students would not feel safe, fully supported, and fully included at school.  (R.A. 0200-0201).

After the shirt was brought to the Principal's attention, she met with the Plaintiff and she explained why the shirt violated the Dress Code.  When the Principal asked the Plaintiff to remove the shirt, he refused and his parents were called. The Principal then met with the Plaintiff and his father and, after hearing the Principal's explanation of the dress code, he chose to dismiss Plaintiff from school for the rest of the day rather than have him remove or cover-up the shirt. Plaintiff was not disciplined. (R.A. 0200-0201).

After the Plaintiff's dismissal from school, he posed for pictures with his father which were posted on social media in relation to the incident.  On April 13, 2023, there were individuals outside of NMS, but not on school property, holding signs that read, "there are only two genders" and "keep woke politics out [of] our schools."  (R.A. 0100, 0202). The Superintendent received complaints from the LGBTQ+ community members. Both the Superintendent and Plaintiff spoke at the School Committee meeting that night about the incident involving the shirt. (R.A.

0100). On April 14, 2023, there were counter protests held outside NMS. The Superintendent received complaints about those messages as well. (R.A. 0201). The incident involving Plaintiff's t-shirt became the subject of local and national news coverage that included interviews of Plaintiff and significant discussion on social media. (R.A. 0101, 0202). Defendants received an ongoing stream of hateful messages, tweets, emails, and phone calls, some threatening. As a result, the Middleborough Police Department provided additional support to NMS. (R.A. 0100-0101).

Following the March 21, 2023, incident involving the t-shirt, Plaintiff expressed his views on gender identity and transgender rights on local and national news media outlets, radio broadcasts, and social media. Plaintiff was permitted to express his political views in school and to protest Defendants' decision that he remove the t-shirt by wearing other clothing while at school with messages including, "Don't Tread on Me," "First Amendment Rights," "Freedom Over Fear," and "Let's Go Brandon." Plaintiff was not asked to remove this clothing or disciplined for his messages. (R.A. 0201, 0203-0204).

On April 27, 2023, the Superintendent received correspondence from an attorney representing Plaintiff claiming that Plaintiff was intending to wear the t-shirt bearing the phrase "There Are Only Two Genders" to school on May 5, 2023. (R.A. 0101, 0058-0061). On May 1, 2023, NMS staff received over fifty (50)

telephone messages that contained hateful and lewd messages after the news coverage about Plaintiff. These calls continued the following week to a lesser degree.  Given the media attention the subject had garnered, there were concerns not only that other students would also attempt to wear clothing with the same or similar messages, but also that if Plaintiff wore the same or similar shirt to school on May 5, 2023, that it would cause significant disruption in the school and would place students in the LGBTQ+ community in fear for their safety.  (R.A. 0100-0101, 0201).

On May 5, 2023, Plaintiff arrived at NMS wearing a t-shirt with the message "There are Censored Genders.", with the word "Censored" written on tape cover the words "Only Two". This shirt was almost identical to the first shirt, except that the word "Censored" was taped over the words "Only Two." To avoid disruption and to protect not only gender nonconforming and transgender students' safety, but also their ability to participate fully in class, the Assistant Principal brought Plaintiff to his office while the Principal and Superintendent conferred with School Counsel. When the Principal entered the Assistant Principal's office, Plaintiff had already removed the shirt. Plaintiff was not disciplined for wearing the shirt to school on May 5, 2023 and was permitted to attend his classes in the usual course wearing a different shirt. (R.A. 0203). On May 9, 2023, two additional students appeared at NMS with t-shirts bearing the slogan, "there are only two genders."

Neither student was permitted to wear the shirt during school, and like the Plaintiff, neither were disciplined. (R.A. 0203).

On May 17, 2023, Plaintiff filed the instant action alleging that the NMS Dress Code and Defendants' directive to Plaintiff that he remove the t-shirt with a message that "there are only two genders" and the t-shirt that had taped over part of the first message and instead read, "there are censored genders" violated his First Amendment rights.  Plaintiff sought a preliminary injunction enjoining Defendants from enforcing the Dress Code both facially and as applied to prohibit Plaintiff from wearing the t-shirts. (R.A. 0016-0038).

On May 18, 2023, Plaintiff filed an Emergency Motion for a Temporary Restraining Order ("TRO") and Preliminary Injunction (PI). (R.A. 0002). On June 1, 2023, the Court denied Plaintiff's motion for a TRO.  (R.A. 00010). On June 9, 2023, Defendants filed an Opposition to Plaintiff's PI Motion.  By Order dated June 16, 2023, a judge of the District Court (Talwani, J) denied Plaintiff's PI Motion finding that Plaintiff had not shown a substantial likelihood of success on his claim that Defendants violated his constitutional rights in requiring him to remove the t-shirts because Plaintiff was not able to counter Defendants showing that enforcement of the Dress Code was undertaken to protect the invasion of the rights of other students to a safe and secure educational environment and found that the Dress Code did not facially violate Plaintiff's First

Amendment rights.  (R.A. 001).  The Court noted in a footnote that "[t]he court

need not determine at this juncture whether Defendants were also justified in

prohibiting the Shirt under <u>Tinker</u> based on a material disruption of classwork or

substantial disorder."  Appellant's Opening Brief ("Brief"), Addendum, 013, fn. 4.

On June 23, 2023, Plaintiff filed a Notice of Interlocutory Appeal.  (R.A. 0013).

On July 17, 2023, the parties filed a Joint Motion for Entry of Final

Judgment which was granted by the Court (Talwani, J.) on July 19, 2023.  (R.A.

0014).  Plaintiff filed a Notice of Appeal from the final judgment.  (R.A. 0015).

### <u>Summary of the Arguments</u>

Plaintiff, a seventh grade student attending Nichols Middle School in

Middleborough, Massachusetts, filed his Complaint after he was told to remove a

t-shirt that he wore to school that had emblazoned on it the message, "There Are

Only Two Genders," ("t-shirt") a message that is inherently exclusionary and

harassing to members of the LGBTQ+ community at NMS and which in essence

tells transgender and gender nonconforming students that their gender identity, a

protected status in the Commonwealth of Massachusetts, is not valid and after he

wore the same t-shirt to school, but with tape covering up the words "Only Two,"

that read, "There Are CENSORED genders."  Plaintiff's message targeting a group

of middle school students based on their differentiating characteristic, their gender

identity, is not protected speech under the First Amendment while Plaintiff is present in the Middle School.

In his Opening Brief, Plaintiff argues that the messages on his shirts are protected by the First Amendment because, by wearing the t-shirt he was expressing his view on gender identity to share his viewpoint at school and to respond to Defendants' "take" on gender identity, because he believes that Defendants' "philosophy" on gender identity is "false and harmful". Plaintiff repeatedly argues in his Opening Brief that the messages on his shirt are "purely ideological and target at no one", and that the speech did not target any "protected class." He, further claims that the message is protected because he wants to make students aware of his views to "show that caring and compassionate people can believe that sex is binary without being hateful or bigoted towards those with different views". Opening Brief, pp. 7, 9, 12, 17, and 22. Plaintiff's speech is not protected by the First Amendment while at the middle school. Plaintiff's argument is based on the false premise that a student's gender identity is a "viewpoint" or "philosophy" of the student's as opposed to a core identifying characteristic of the student. Defendants were not expressing a "philosophy" or "ideology" by having Plaintiff remove the t-shirt, but instead were protecting the rights of transgender and gender non-conforming students to be free from harassment and to attend school in a safe and supportive environment, as required by State law, G.L. c. 76,

14

§ 5.  Plaintiff's argument also ignores the obligation of Defendants under both state and federal law to protect students from discrimination and bullying based on their gender identity and to provide students who are transgender and gender nonconforming with equal educational opportunities which includes taking steps to create a culture in which transgender and gender nonconforming students feel safe, supported, and fully included at school.  Defendants would have been remiss in their obligation had they not required that Plaintiff remove his t-shirt that targeted this particularly vulnerable group of students. Nowhere in Plaintiff's Brief does he acknowledge that the Commonwealth of Massachusetts legislature has determined that gender identity should be protected generally and specifically in schools. Nor does Plaintiff acknowledge the laws that protect students from being targets of bullying or harassment based on actual or perceived differentiating characteristics, include gender identity.  The First Amendment does not allow public school students to display messages that infringe on the rights of other students who are members of a protected class as is the case here. The protection of transgender and gender non-conforming students from discrimination and harassment is paramount and far outweighs the interest of Plaintiff in wearing a t-shirt with a message that targets a characteristic of this vulnerable group of students, their gender identity.

The Plaintiff's First Amendment rights must be considered in the context in which he attempted to wear the disputed shirt.  Plaintiff wore his t-shirt to a middle

school, comprised of ten- to fourteen-year-old students, some of whom had previously raised concerns about how the LGBTQ+ population is treated at school. The Superintendent and Principal were aware that students at NMS had attempted suicide or had suicidal ideations in the past few years, including members of the LGBTQ+ community and that those situations had frequently cited LGBTQ+ status and treatment as a major factor.  Defendants also made their decision to have Plaintiff remove his t-shirt knowing of their obligation under the law and DESE guidance to prevent bullying and discrimination of this vulnerable group of students and to affirmatively create a safe and secure educational environment for them and all students while at NMS. As the District Court correctly held, Defendants did not violate Plaintiff's First Amendment rights because Defendants' enforcement of the Dress Code in NMS was undertaken to protect the invasion of the rights of transgender and gender non-conforming students to a safe and secure educational environment, a right guaranteed to them under both federal and state law.

In his Opening Brief, Plaintiff argues that under Tinker the invasion of the rights of others requires, that there be an assault and battery of a student or severe harassment targeting a particular student.  Opening Brief, p. 14.  Plaintiff's interpretation of the "invasion of the rights of others" prong of Tinker is too narrow and is not supported by the case law cited.  The invasion of the rights of

others does not require there to be an assault and battery of a student or severe harassment targeted at a particular student. Instead, "[p]ublic school students who may be injured by verbal assaults on the basis of core identifying characteristics such as race, religion, or sexual orientation, have a right to be free from such attacks while on school campuses . . . Being secure involves not only freedom of physical assaults but from psychological attacks that cause young people to question their self-worth and their rightful place in society." Harper v. Poway Unified School District, 445 F.3d 1166, 1178 (9th Cir. 2006) cert. granted and vacated as moot, 549 U.S. 1262, 127 S.Ct. 1484, 167 L.Ed. 2d 225 (2007). It is disingenuous for Plaintiff to argue that his message that he admits expresses his view that the gender identity of transgender and gender nonconforming students does not exist, was not targeted at students in that protected class and would not affect those students' right to feel safe, supported and fully included in the academic environment. Plaintiff's message clearly invaded the rights of students based on their gender identity by communicating that their gender identity was not valid and as such was not protected speech under the First Amendment. Plaintiff's message was no different for example, than if a student had worn a t-shirt to school with the message claiming there are only two races and that races other than the two identified did not exist or a t-shirt with the message that there are only two religions and that all other religions were not legitimate and there was no place for

them.  Such messages would invade the rights of students of the excluded races or religions by invalidating and demeaning those students and invading their right to feel safe and secure while at school.

In her decision on the PI Motion, the District Court (Talwani, J.) did not reach the issue of whether Defendants were also justified in prohibiting Plaintiff's t-shirt based on material disruption of classwork or substantial disorder.  If this Court is not inclined to affirm the District Court's decision based on the District Court's finding that Plaintiff's speech invaded the rights of others, then this Court should remand the matter to the District Court to make factual findings on the issue.  However, if this Court is inclined to review that forecast of substantial disorder prong of <u>Tinker</u> here, there is sufficient evidence before this Court to find that Defendants were justified in prohibiting Plaintiff's t-shirt because Defendants reasonably forecasted material disruption of classwork or substantial disorder.  Based on Defendants' knowledge of the students at NMS, including the active participants in the GSA, Defendants could reasonably forecast that if Plaintiff and subsequently others were allowed to wear t-shirts with the message "There Are Only Two Genders" there would be disruption in the classwork of students at NMS and the wearing of the t-shirt with the message alone would materially disrupt transgender and gender non-conforming students' ability to focus on learning while in a classroom where the message is being displayed.

Finally, the District Court (Talwani, J.) properly found that the Dress Code "both facially and as applied" to Plaintiff was not facially vague or overly broad where the Dress Code does not threaten discipline for a violation of the Dress Code that has not been specifically identified by the school as improper prior to discipline being imposed.  Plaintiff in fact, was not disciplined and accordingly, was not subjected to an adverse action regardless of whether he engaged in constitutionally protected conduct and therefore cannot prevail on his First Amendment claim.

## **ARGUMENT**

I.    **Plaintiff's Messages Were Not Protected While at NMS.**

"The Supreme Court has long held that schools have a special interest in regulating speech that 'materially disrupts classwork or involves substantial disorder or invasion of the rights of others.'" Doe v. Hopkinton Public Schools, 19 F.4th 493 (1st Cir. 2021) (quoting, Tinker v. U.S., 393 U.S. 503 (1969)),  "'Courts generally defer to school administrators' decisions regarding student speech so long as their judgment is reasonable.'" Id., at 505 (quoting, Norris ex rel. A.M. v. Cape Elizabeth Sch. Dist., 969 F.3d 12, 30 (1st Cir. 2020)).  "The application of Tinker must account for such factors as the age and grade level of the students to whom the speech is directed and any factors particular to the educational environment or history of school or student body in question.  Temporal factors and recent events might be

relevant." Id., citing Tinker, 393 U.S. at 507. "The Tinker inquiry also accounts for the professional knowledge and experience of school administrators in setting and enforcing disciplinary standards." N.J. by Jacob v. Sonnabend, 37 F.4th 412 (7th Cir. 2022) (quoting, Brandt v. Bd. of Educ., 480 F.3d 460, 467 (7th Cir. 2007)), citing Tinker, 393 U.S. at 507 ("[T]he Court has repeatedly emphasized the need for affirming the comprehensive authority . . . of school officials, consistent with fundamental constitutional safeguards, to prescribe and control conduct in schools.").

Here, the application of Tinker must take into account that Plaintiff attends middle school with students in the sixth, seventh and eighth grades who are between ten to fourteen years old, an age deserving of more protection given the stage of the maturation process. Plaintiff does not acknowledge in his Brief the composition of the student body at NMS, including the age range or the environment, instead citing with one exception, to case law that does not arise from disputes over student speech in a middle school. The one case that Plaintiff does cite to that arises from a dispute over speech in a middle school setting, Newsom ex rel. Newsom v. Albermarle County School Bd., 354 F.3d 249 (4th Cir. 2003), is easily distinguishable from the facts here and involved a t-shirt worn by a student containing a message related to weapons and the broad nature of the specific language contained in that school's dress code that did not involve the discrimination or targeting of students based on

a differentiating characteristic. Here, Plaintiff's message specifically targeted a group of students based on a differentiating characteristic, their gender identity, a characteristic protected under state and federal law in a school setting.

The application of <u>Tinker</u> here, must also take into account the knowledge and experience of the Superintendent and Principal. The analysis of whether student speech is protected is very fact specific. Defendants are not required to prove that "unless the speech at issue is forbidden serious consequences will in fact ensue." See, <u>Nuxoll ex rel. Nuxoll v. Indian Prairie School Dist. #204</u>, 523 F.3d 668 (7th Cir. 2008). Instead, Defendants are required to be proactive in preventing discrimination and bullying of students based on a differentiating characteristic such as a student's gender identity, particularly based on their knowledge of the vulnerability of gender non-conforming and transgender youth in general and specifically, those attending NMS. The Defendants were also required to be proactive in meeting their responsibility under state and federal law to protect students from discrimination and bullying on the basis of their gender identity, and to ensure that those students are afforded a safe, secure and inclusive educational environment so that they are able to progress academically and developmentally.

Given these factors, Defendants' judgment in enforcing the NMS Dress Code and requiring Plaintiff to remove his t-shirts with the message that "There Are Only Two Genders" and "There Are Censored Genders" was reasonable and the District

Court's decision that deferred to the school administrators' judgment should be affirmed.

**a. Defendants Enforcement of the Dress Code Prohibiting Plaintiff from Wearing the T-Shirts While at School Did Not Violate Plaintiff's First Amendment Rights Because the Prohibition Was Undertaken to Protect the Invasion of Rights of Other Students to a Safe and Secure Educational Environment.**

The message on Plaintiff's t-shirt "There Are Only Two Genders" is not protected speech while at NMS because the message invaded the rights of other students at NMS to a safe and secure educational environment that would allow them to progress academically and developmentally. The message targeted a group of students based on a differentiating characteristic protected by state and federal law. A student's gender identity is not a "political" or "social issue" or "ideology," as Plaintiff claims, but is for that student an innate characteristic no different from another student's sexual orientation or membership in another protected category based on a differentiating characteristic, such as race or religion.

Defendants are specifically charged by law with shielding students based on their gender identity from discrimination and with providing them with a safe and secure learning environment. In the Commonwealth of Massachusetts, the legislature has determined that gender identity should be protected generally and specifically in schools. G.L. c. 76, § 5 prohibits discrimination on the basis of gender identity against students who enroll in or attend public schools. See An Act Relative

to Gender Identity (Chapter 199 of the Acts of 2011).  The Massachusetts school bullying statute, G.L. c. 71, § 37O, which protects students from becoming targets of bullying or harassment based on actual or perceived differentiating characteristics, including gender identity or expression on school grounds and at school sponsored and related activities, requires schools to develop anti-bullying plans that recognize the vulnerability of certain students. The regulations promulgated by the Massachusetts Board of Elementary and Secondary Education ("DESE") to implement the protection accorded gender identity requires school districts to provide students with a safe a supportive environment to progress academically and developmentally.  Those regulations require that '[a]ll public school systems shall, through their curricula, encourage respect for the human and civil rights of all individuals regardless of gender identity.'" Foote v. Town of Ludlow, 2022 WL 18356421 (Civil Action No. 22030041-MGM, Slip Copy (2022)) (quoting, 603 C.M. R. § 26.05).[2]   In addition, DESE has issued Guidance to help school district administrators take steps to create a culture in which transgender and gender nonconforming students feel safe, supported and fully included, and to meet each school's obligation to provide equal educational opportunities to all students. (R.A. 77-84).

---

[2] While the District Court case does not have precedential value because it was not published in the Federal Supplement, it is worth noting that the Court (Mastroianni, J.) recognized the DESE guidance.

Not only do state laws require that school district administrators take steps to protect transgender and gender non-conforming students from discrimination and harassment and provide them with a school culture where they feel safe and fully supported, but federal anti-discrimination statutes also prohibit discrimination on the basis of gender identity which courts have found includes Title IX. See, Grimm v. Gloucester County School Board, 972 F.3d 586 (4th Cir. 2020), citing, Bostock v. Clayton County, 590 U.S. 140 S. Ct. 1731 (2020). In short, both state and federal laws require Defendants to create a culture in which transgender and gender nonconforming students feel safe, supported, and fully included; to provide equal educational opportunities to all students; and to protect students from harassment and discrimination based on their gender identity. As set forth above, it is in the context of the legal protection accorded gender identity and the specific knowledge of the Defendants that will determine whether certain speech constitutes an "invasion of the rights of others", as established by the U.S. Supreme Court in Tinker v. U.S., 393 U.S. 503 (1996).

With respect to the first shirt, in addition to their knowledge of the state and federal anti-discrimination laws described above, Defendants had specific knowledge of the vulnerability of NMS students who are members of the LGBTQ+ community (a protected class) and an interest in supporting the existence and rights of these students. Student survey data collected in June 2022 showed over 20

individual students' comments about perceived bullying at school, feeling unwelcome at school, and expressing specific concerns about how the LGBTQ+ population is treated at school. (R.A. 0088-0089, 0102-0103). The Superintendent and Principal were aware of several NMS students who had attempted to commit suicide or have had suicidal ideations in the past few years, including members of the LGBTQ+ community. These situations have frequently cited LGBTQ+ status and treatment as a major factor. (R.A. 0088-0089, 0102-0103). In addition to this site-specific information, the vulnerability of students in the LGBTQ+ community is well documented. Studies have shown that sexual minority and transgender youth face significantly more forms of peer victimization compared to heterosexual and non-transgender peers[3]. See, Grimm, 972 F.2d at 594 - 597. Transgender youth consistently reported higher levels of truancy and absenteeism, general victimization, sexual orientation and gender-based bullying, and had more negative perceptions of the climates of their schools, compared to their non-transgender peers[4]. Other studies have shown that openness, validation, and support of gender diversity at school can positively affect transgender youths' well-being. Conversely, various forms of non-recognition of gender identity, victimization and bullying

---

[3] Greta R. Bauer et al., Intervenable factors associated with suicide risk in transgender persons: a respondent driven sampling study in Ontario, Canada, BMC Public Health, June 2015, https://bmcpublichealth.biomedcentral.com/articles/10.1186/s12889-015-1867-2.

[4] Jack K. Day et al., Safe Schools? Transgender Youth's School Experiences and Perceptions of School Climate, Journal of Youth and Adolescence, Aug. 2018, https://pubmed.ncbi.nlm.nih.gov/29858740/.

towards transgender youths impede their wellbeing[5].

Against the backdrop of their own personal knowledge, documented studies, state and federal statutes, regulations and DESE guidance, Defendants reasonably determined that the message on Plaintiff's t-shirt invaded the rights of others insofar as it attempted to extinguish the gender identity of transgender and gender non-conforming students and did not create a culture in which transgender and gender nonconforming students would feel safe, fully supported and fully included at school. "Public school students who may be injured by verbal assaults on the basis of core identifying characteristics such as race, religion, or sexual orientation have a right to be free from such attacks while on school campuses. . . . Being secure involves not only freedom from physical assaults but from psychological attacks that cause young people to question their self-worth and their rightful place in society." Harper v. Poway Unified School District, 445 F.3d 1166, 1178 (9th Cir. 2006), cert. granted and vacated as moot, 549 U.S. 1262, 127 S.Ct. 1484, 167 L.Ed. 2d 225 (2007). In light of the foregoing, it is clear that Defendants' decision that Plaintiff's message on the first t-shirt would invade the rights of others, the rights of particularly vulnerable students who are members of the LGTBQ+ community (a protected class) to feel safe in school and to be free from harassment and bullying while in

---

[5] Jamie Kelley, et al., School Factors Strongly Impact Transgender and Non-Binary Youths' Well-Being, CHILDREN-BASEL, Oct. 2022, https://pubmed.ncbi.nlm.nih.gov/36291456/.

school, was reasonable.

Relying on <u>Norris ex rel. A.M</u>, the Plaintiff claims that the Defendants cannot rely on the fact that his shirts infringed on the rights of others because the shirts did not target a specific individual.  This argument misses the mark.  In this regard, the facts of <u>Norris ex rel. A.M</u> are distinguishable because the defendants in that case characterized the speech at issue as bullying a specific individual.  That is not the case here, where the Plaintiff's message targeted an entire protected class of individuals.  In such circumstances, courts have consistently upheld prohibitions on speech that attempt to derogate groups based on their protected class status. For example, in <u>Sapp v. School Bd. Of Alachua County, Fla.</u>, 2011 WL 5084647 (N.D.Fla. 2011), the Court held that the school district properly prohibited students from wearing clothing with the words "Islam is of the Devil".  In so holding, the Court acknowledged that:

> "Islam is of the Devil" presents a highly confrontational message. It is akin to saying that the religion of Islam is evil and that all of its followers will go to hell. The message is not conducive to civil discourse on religious issues; nor is it appropriate for school generally. "Part of a public school's mission must be to teach students of differing races, creeds and colors to engage each other in civil terms rather than in terms of debate highly offensive or highly threatening to others." <u>Scott</u>, 324 F.3d at 1249 (quoting, <u>West v. Derby Unified Sch. Dist. No. 260</u>, 23 F.Supp.2d 1223, 1233– 34 (D.Kan.1998).

Likewise, in <u>Scott v. School Bd. of Alachua County</u>, 324 F.3d 1246 (11th Cir. 2003), the Court upheld a ban on the display of the Confederate flag by students in school because "the district had concluded that the display of certain symbols that

have become associated with racial prejudice are so likely to provoke feelings of hatred and ill will in others that they are inappropriate in the school context."; and in Harper, the Court found that a prohibition of a shirt bearing the words "BE ASHAMED, OUR SCHOOL EMBRACED WHAT GOD HAS CONDEMNED" handwritten on the front, and "HOMOSEXUALITY IS SHAMEFUL" handwritten on the back, did not violate students' First Amendment rights because the speech intruded upon the rights of other students. Harper, 445, F.3d, at 1185.

Finally, in Boroff v. Van Wert City Bd. of Educ., 220 F.3d 465 (6th Cir. 2000), the Court upheld a ban on wearing t-shirts promoting music performer Marilyn Manson, including a shirt that depicted a three-faced Jesus, accompanied by the words "See No Truth. Hear No Truth. Speak No Truth." On the back of the shirt, the word "BELIEVE" was spelled out in capital letters, with the letters "LIE" highlighted, based on its finding that "T-shirts contain symbols and words that promote values that are so patently contrary to the school's educational mission, the School has the authority, under the circumstances of this case, to prohibit those T-shirts."

In each of these cases, the courts recognized the interest of public schools in protecting children from messages that derogate core characteristics such as race, religious and sexual orientation, even without a showing that the messages were targeted at specific individuals.  The t-shirts worn by the Plaintiff in this case are no

different than other messages and symbols that courts have found unworthy of protection under the First Amendment in the school context because they diminish, provoke and derogate students in a protected class.[6]

In his Brief, Plaintiff also incorrectly asserts that to interfere with the rights of other students under Tinker the activity must involve "(1) severe harassment, (2) assault, or (3) battery." Plaintiff's opening Brief, p. 24.  Nothing in Tinker or its progeny requires such a narrow reading of the language. Such a narrow reading again, would prevent school officials from abiding by the requirements imposed on them by state and federal law, to protect students from harassment and discrimination and to prevent the creation of an unsafe and unsecure educational environment for gender nonconforming and transgender students.  Instead, under Tinker "[i]n order for the State in the person of school officials to justify prohibition of a particular expression of opinion, it must be able to show that its action was caused by something more than a mere desire to avoid the discomfort

---

[6] In its Amicus Brief, the American Civil Liberties Union of Massachusetts, Inc. (ACLU) argues that Massachusetts law, G.L. c. 71, § 82 "mandates that in Massachusetts student free speech may be restricted only if it will 'cause any disruption or disorder within the school.'"  ACLU Amicus Brief, p. 7.  The ACLU's interpretation of the laws applicable to schools in Massachusetts is too narrow and was expressly rejected by this Court in Doe v. Hopkinton Public Schools, 19 F.4th 493, 511-512 (1st Cir. 2021).  As this Court has correctly recognized, if the ALCU's argument was correct it would nullify Massachusetts anti-bullying statute, G.L. c. 71, § 37O and G.L. c. 76, § 5, that prohibits discrimination based on gender identity against students who enroll in public schools as well as Title IX of the Civil Rights Act 42 U.S C.§ 1681 et. seq. Regardless, because Plaintiff did not make this argument below, the argument is waived.  See, Campos-Orrego v. Rivera, 175 F.3d 89, 95 (1st. Cir. 1999).

and unpleasantness that always accompany an unpopular viewpoint." <u>Tinker</u>, at 509.  Here Defendants have made such a showing.  They took action to protect transgender and gender non-conforming students and other members of the LGBTQ+ community against feeling unsafe and excluded from the educational environment because of Plaintiff's message that their gender identity, did not exist. Defendants are charged with creating an inclusive, not an exclusive educational environment so that all students, regardless of their differentiating characteristics can progress academically and developmentally Defendants were not required to wait until demeaning and offensive language rose to the level of severe harassment, assault or battery before taking action to protect the rights of their students.

Accordingly, the District Court's finding that Defendants' enforcement of the Dress Code prohibiting Plaintiff from wearing a t-shirt with the message "THERE ARE ONLY TWO GENDERS" while at school did not violate Plaintiff's First Amendment rights because the prohibition was undertaken to prevent the invasion of rights of other students to a safe and secure educational environment should be affirmed.

**b. Defendants Enforcement of the Dress Code Prohibiting Plaintiff from Wearing the T-Shirt Using Tape to Cover Part of the Offending Message Did not Violate Plaintiff's First Amendment Rights Because the Taped T-Shirt Did Not Merely Protest Censorship but Conveyed the Very Message that Invaded the Rights of Other Students.**

On May 5, 2023, Plaintiff wore the same t-shirt, but this time he had taped over the words "only two" with the word "CENSORED." Prior to that day, Plaintiff's Counsel alerted Defendants that Plaintiff was going to be wearing the t-shirt with the message "There Are Only Two Genders,". Defendants did not make the decision to have Plaintiff remove the second t-shirt in a vacuum. By the time Plaintiff wore the second t-shirt, the cat was already out of the bag so to speak, and in light of the temporal proximity of the two shirts and the substantial news and social media attention and public discourse given to the first t-shirt and the circumstances surrounding the decision to require the Plaintiff to remove it, the covering of the words "Only Two" with the word "Censored" did nothing to hide the message that Plaintiff was sending – his view that the gender identity of transgender and gender non-conforming students was not valid and did not exist. Again, context matters when determining whether Plaintiff's message was protected speech, not Plaintiff's intent. Plaintiff was permitted and did express his views on gender identity and transgender rights outside of NMS on local and national news media outlets, radio broadcasts, and social media. Plaintiff was

permitted to express his political views and protest Defendants' decision that he remove the t-shirt through other clothing while at school with messages including, "Don't Tread on Me," "First Amendment Rights," "Freedom Over Fear," and "Let's Go Brandon."  Plaintiff was not asked to remove this clothing or disciplined for his messages. (R.A. 0201, 0203-0204). Defendants did not require Plaintiff to remove his t-shirt on May 5th because he was protesting their decision, but because as the District Court correctly found, "the school administrators could reasonably conclude that the Taped Shirt did not merely protest censorship but conveyed the "censored" message and thus invaded the rights of other students."  Plaintiff's Opening Brief, Addendum, p. 013-014.  Accordingly, the District Court's decision should be affirmed.

II.    **Defendants Reasonably Forecasted that Plaintiff's T-Shirts Would Materially and Substantially Disrupt the Work and Discipline of the School.**

In rendering her decision, the judge of the District Court, (Talwani, J.) specifically did not determine whether Defendants were justified in prohibiting the shirts under <u>Tinker</u> based on a material disruption of classwork or substantial disorder.  Plaintiff's Opening Brief Addendum, p. 013, fn. 4. If this Court is not inclined to affirm the District Court's ruling on the grounds that Plaintiff's message invaded the rights of other students, the Court should remand the matter back to the District Court to make factual findings and to determine whether Defendants were

justified in prohibiting the shirt based on material disruption of classwork or substantial disorder.

However, based on the evidence in the record, if the Court is inclined to review the issue, Defendants were clearly justified in prohibiting Plaintiff from wearing the shirt because they reasonably could forecast that the message on Plaintiff's shirts would also cause a substantial disruption in the school[7]. The analysis of whether student speech is protected is fact specific. Defendants are not required to prove that "unless the speech at issue is forbidden serious consequences will in fact ensue.  See, Nuxoll ex rel. Nuxoll v. Indian Prairie School Dist. #204, 523 F.3d 668 (7th Cir. 2008). "It is enough for a school to present "facts which might reasonably lead school officials to forecast substantial disruption.'"  Id. at 673, (quoting, Boucher v. School Board of School District of Greenfield, 134 F. 3d 821, 827-828 (7th Cir. 1998)).   "In the school context, the crucial distinction is the nature of the speech, not the source of it. The cases do not distinguish between 'substantial disruption' caused by the speaker and 'substantial disruption' caused by the reactions of onlookers or a combination of circumstances."  Dariano, 767 F.3d at 764, 778 (2014); citing, Taylor v. Roswell Indep. Sch. Dist., 713 F.3d 25, 38, 38 n. 11 (10th Cir.2013).  Here, Defendants did not make the decision to have Plaintiff

---

[7] On appeal, this Court may embrace or reject the rationale employed by the lower court and still uphold its decision on any ground revealed by the record. Houlton Citizens' Coalition v. Town of Houlton, 175 F.3d 178, 184 (1st Cir. 1999).

remove the first t-shirt in a vacuum, but instead were aware of the composition of the students at NMS, the active members of the LGBTQ+ community attending the school and the past incidents in which those students expressed concern about not being sufficiently protected. With this knowledge, Defendants reasonably concluded that allowing the Plaintiff to wear a shirt openly derogating these students gender identity would lead to a response by those students and a substantial disruption to the learning environment. Certainly, it is reasonable to conclude that a substantial disruption to the learning environment of a transgender or gender non-conforming students would occur if those students were in the same class where the message was displayed, causing them to focus on the message rather than their classwork.

Context matters when determining whether Plaintiff's message was protected speech, not Plaintiff's intent, and Defendants forecast of disruption was verified by the time the Plaintiff attempted to wear the second shirt. After Plaintiff wore the first t-shirt, there were protests (albeit outside of school, but visible to the students when entering) requiring increased police presence at school, and the events surrounding the Plaintiff wearing that shirt had garnered a significant amount of local and national media attention At that point, it was reasonable to conclude that if the Plaintiff were permitted to wear the same shirt, others would follow suit, and in fact they did. If those students had been allowed to continue to wear their t-shirts with the same exclusionary message, it is disingenuous to assert that disruption

would not have ensued with a standoff between a group of students wearing the message that targeted students based on their gender identity and those students who are members of the LGBTQ+ community and their allies. Certainly, Defendants did not have to wait for disruption to ensue. In addition to their being conflict between two groups of students based on the message displayed, Defendants could reasonably forecast that there would be substantial disruption to the education environment of transgender and gender non-conforming students who may be in the same classroom where the message was being displayed.

The anticipated and inevitable disruption that would follow if Plaintiff continued to wear either t-shirt in school denying the validity of a protected class of students and the rights of transgender and gender non-conforming students to attend school free of discrimination, fear, harassment, and bullying is evident. School officials acted reasonably in determining that it was necessary to make the plaintiff change his shirt to prevent such disruption and they were not required to "wait until the horse has left the barn before closing the door." Barr v. Lafon, 538 F.3d 554, 568 (6th Cir. 2008) (quoting, Lowery v. Euverard, 497 F.3d 584, 591-2 (6th Cir. 2007)). The "'First Amendment does not require school officials to wait until disruption actually occurs. . . . In fact, they have a duty to prevent the occurrences of disturbances.'" Chandler v. McMinnville School Dist., 978 F.2d 524, 530 (9th Circ. 1992), (quoting, Karp v. Becken, 477 F.2d 171, 175 (9th Cir. 1973)). Even if

the disruption is not immediately likely, school officials are charged with the duty to "'inculcate the habits and manners of civility as values conducive both to happiness and to the practice of self-government." "To do so, they must have the flexibility to control the tenor and contours of student speech within school walls or on school property, even if such speech does not result in a reasonable fear of immediate disruption.'" Scott v. School Bd. of Alachua County, 324 F.3d. 1246 (2003), (quoting, Demno v. School Bd. of Volusia County, 218 F.3d 1267, 1271 (11th Cir. 2000)).

The anticipated and inevitable disruption that would follow if Plaintiff continued to wear either t-shirt in school denying the validity of existence of a protected class of students and the rights of transgender and gender non-conforming students to attend school free of discrimination, fear, harassment, and bullying is evident. School officials acted reasonably in determining that it was necessary to make the plaintiff change his shirt to prevent such disruption and they were not required to "wait until the horse has left the barn before closing the door." Barr, 538, F3d., at 568. Accordingly, the District Court's decision that Plaintiff's speech was not protected while at NMS should be affirmed for this additional reason.

III.    **The NMS Dress Code Is NOT Facially Vague or Overly Broad.**

Finally, because Plaintiff's speech was not protected by the First Amendment, Plaintiff does not have Article III standing to challenge the language contained in the Dress Code.  See, Doe, 19 F.4th, at 510, citing, Osediacz v. City of Cranston, 414 F.3d 136, 140-41 (1st Cir. 2005).  Even if Plaintiff had standing to challenge the language of the Dress Code, his overbreadth argument fails because the Dress Code by prohibiting clothing that implies or depicts imagery or hate speech that target groups based among other protected categories, sexual orientation or gender identity, comports with the laws and regulations that protect students from discrimination, harassment and bullying.

A school dress code may be considered unconstitutionally vague if it:  (1) fails to provide those targeted by the statute a reasonable opportunity to know what conduct is prohibited, or (2) is so indefinite that it allows arbitrary and discriminatory enforcement."  A.M. ex rel. McAllum v. Cash, 585 F.3d 214, 224-225 (5th Cir. 2009) (quoting, Women's Medical Ctr. of N.W. Houston v. Bell, 248 F.3d 411, 421 (2001) (citing, Grayned v. City of Rockford, 408 U.S. 104, 108–09, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972)).  This standard, which was adopted from the standard for interpretation of criminal statutes, is relaxed in the school context because "maintaining security and order in the schools requires a certain degree of flexibility in school disciplinary procedures, and we have respected the value of preserving the

informality of the student-teacher relationship." Bethel School Dist. No. 403 v. Fraser, 478 U.S. 675, 686 (1986) (quoting, New Jersey v. T.L.O., 469 U.S. at 340, 105 S.Ct., at 742)). "Given the school's need to be able to impose disciplinary sanctions for a wide range of unanticipated conduct disruptive of the educational process, the school disciplinary rules need not be as detailed as a criminal code which imposes criminal sanctions." Id.

In A.M. ex rel. McAllum, supra., the Fifth Circuit Court of Appeals found that a school dress code stating that "there will be no tolerance for clothing or accessories that ha[ve] inappropriate symbolism, especially that which discriminates against other students based on race, religion, or sex", was not unconstitutionally vague in the school context. A.M. ex rel. McAllum, 585 F.3d at 225. The decision was made in the context of a decision to use the dress code to prohibit the display of the confederate flag. In upholding the school's application of the policy, the Court acknowledged that the policy was detailed enough to put students on notice of the type of conduct that was prohibited and that, in any event, the warnings given in the specific circumstances of the case provided clarity as to what was prohibited. The Court also noted that the plaintiffs' challenge to the policy could not survive the fact that they were never disciplined because they voluntarily chose to leave school instead of surrendering the offending items.

In this matter, the NMS policy is nearly identical to the policy upheld by the A.M. ex rel. McAllum, supra. and this case stands on all fours with that one insofar as the policy was explained to the plaintiff along with the reason he was required to remove the shirts and he was not disciplined as a result. A policy that prohibits "imagery or hate speech" that targets protected classes is sufficiently defined so that any reasonable person would understand what is prohibited, particularly where, as here, school administrators explain the rule and provide an opportunity for compliance before imposing discipline.

Plaintiff's message suggesting that their gender identity was invalid clearly was harassing in nature and directed at transgender and gender non-conforming students. Plaintiff's attempt to compare his message with those allowed within NMS misses the mark as the messages contained in his Complaint are all messages of inclusion seeking to support students and members of the NMS community who are members of protected classes, as opposed to Plaintiff's message that sought to exclude and to deny the identity of transgender and gender non-conforming students. In addition, the policy can easily be distinguished from those referenced by Plaintiff in his brief because NMS' policy does not discipline a student for wearing something inappropriate to school, unless there are repeated violations. Under the policy, a student is not subject to disciplinary action unless they are first told that what they are wearing is inappropriate and then only after repeated violations. Here, Plaintiff

was informed that his t-shirt violated the dress code. Plaintiff was not disciplined when he wore either shirt[8]. Courts that have opined on school dress code policies have looked at the specific language of the policy at issue. The cases cited by Plaintiff in his brief do not involve middle school dress codes or for that matter dress codes in schools' settings. Regardless, as the District Court properly found, the language in NMS' dress code policy is not overbroad because the dress code does not threaten discipline for a violation of the dress code that has not specifically been identified by the school as improper.

Even if discipline was threatened and Plaintiff was disciplined when he wore the t-shirts -which he was not, the language in NMS' dress code is not overbroad or vague. In his Brief, Plaintiff cites to two specific incomplete sections of the dress code in arguing that the dress code is unconstitutional. Specifically, Plaintiff objects to language that prohibits messages that "target groups" and that are "unacceptable" messages that defy "community standards." Plaintiff's Brief, pp. 54-55. The complete language of the cited dress code is as follows:

- Clothing must not state, imply, or depict hate speech or imagery that target groups based on race, ethnicity, gender, sexual orientation, gender identity, religious affiliation or any other classification.

---

[8] As to the first shirt, the plaintiff was given the option of removing the shirt and returning to his school day in the normal course. When the plaintiff refused to remove the shirt, his parents were called, and his father chose to remove him from school rather than have him change out of the shirt. Likewise, with respect to the second shirt, the plaintiff voluntarily removed the shirt and did not miss any portion of the school day.

- Any other apparel that the administration determines to be unacceptable to our community standards will not be allowed.

If students wear something inappropriate to school, they will be asked to call their parent/guardian to request that more appropriate attire be brought to school. Repeated violations of the dress code will result in disciplinary action.

R.A. 0151-0152, Plaintiff is disingenuous when he asserts that the language that prohibits students from wearing clothing with messages that targets groups based on their protected status such as race, ethnicity, gender, sexual orientation, gender identity, and the like is vague. Even if Plaintiff did not understand that his message "there are only two genders" targeted a group of students based on their protected status, their gender identity, when he wore the t-shirt to school, he was made aware of that fact by Defendants on that day and rather than be disciplined was told to remove the t-shirt. Putting aside that there is no ambiguity in the language, even if Plaintiff misunderstood the dress code and its meaning, Defendants educated him on its meaning when they advised him to remove his t-shirt. The fact that the Plaintiff did not understand the language, does not make the language unconstitutionally overbroad or vague.

Similarly, Plaintiff would not have been disciplined and was not disciplined for wearing a t-shirt that the administration determined to be unacceptable to community standards, nor was he told to remove the t-shirt based on this language contained in the dress code policy and accordingly does not have standing to challenge that language. Even if he did, because the dress code policy does not

threaten discipline for a violation of the dress code that has not been specifically identified, the NMS dress code is not unconstitutional facially or as applied to Plaintiff.

## <u>CONCLUSION</u>

For the reasons set forth above, Defendants respectfully requests that this honorable Court affirm the District Court's decision that Plaintiff's speech was not protected by the First Amendment while at NMS because the Plaintiff's messages invaded the rights of other students to a safe and secure educational environment, and that the NMS dress code facially and as applied to Plaintiff was constitutional. In the alternative, Defendants request that this honorable Court remand the matter to the District Court to make factual findings and to determine whether Defendants properly forecasted substantial interruption if Plaintiff was allowed to wear his t-shirt with the message "There Are Only Two Genders" and "There Are Censored Genders" while at NMS.

RESPECTFULLY SUBMITTED,

DEFENDANTS-APPELLEES
TOWN OF MIDDLEBOROUGH, ET AL.
BY THEIR ATTORNEYS,

*/s/ Deborah I. Ecker*

Deborah I. Ecker, C.A. No. 60290
Gregg J. Corbo, C.A. No. 78709
KP Law, P.C.
101 Arch Street, 12th Floor
Boston, Massachusetts 02110
(617) 654-1714
decker@k-plaw.com
Dated:  November 24, 2023          gcorbo@k-plaw.com

891644v5/60700/1195

43

## <u>CERTIFICATE OF COMPLIANCE</u>

I, Deborah I. Ecker, hereby certify that the foregoing brief complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. 32(f), this brief contains 10,157 words.

I further certify that the foregoing brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point font size in the Times New Roman font style.

<div style="margin-left:40%">

*/s/ Deborah I. Ecker*
Deborah I. Ecker, C.A. No. 60290
KP Law, P.C.
101 Arch Street, 12th Floor
Boston, MA  02110-1109
(617) 556-0007
decker@k-plaw.com

</div>

Dated:  November 27, 2023

CERTIFICATE OF SERVICE

I, Deborah I. Ecker certify that on November 22, 2023, I

electronically filed the foregoing *Brief of Defendants–Appellees Town of*

*Middleborough et al.,* with the Clerk of the Court for the United States Court

of Appeals for the First Circuit by using the appellate CM/ECF system.  I

certify that all participants in the case are registered CM/ECF users, and that

service will be accomplished by the CM/ECF system.


Date:  November 27, 2023                      */s/ Deborah I. Ecker*