Nos. 23-1535, 23-1645

---

# UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

---

L.M., a minor by and through his father and stepmother and natural guardians, Christopher and Susan Morrison,

*Plaintiff-Appellant,*

v.

TOWN OF MIDDLEBOROUGH, MASSACHUSETTS; MIDDLEBOROUGH SCHOOL COMMITTEE; CAROLYN J. LYONS, Superintendent, Middleborough Public Schools, in her official capacity; HEATHER TUCKER, Acting Principal, Nichols Middle School, in her official capacity,

*Defendants-Appellees.*

---

On Appeal from the United States District Court
for the District of Massachusetts, Eastern Division
Case No. 1:23-cv-11111-IT

---

# APPELLANT'S REPLY BRIEF

---

TYSON C. LANGHOFER
P. LOGAN SPENA
ALLIANCE DEFENDING FREEDOM
44180 Riverside Pkwy
Lansdowne, VA 20176
(571) 707-4655
tlanghofer@ADFlegal.org
lspena@ADFlegal.org

ANDREW D. BECKWITH
SAMUEL J. WHITING
MASSACHUSETTS FAMILY INSTITUTE
401 Edgewater Pl., Ste. 580
Wakefield, MA 01880
(781) 569-0400
andrew@mafamily.org
sam@mafamily.org

JOHN J. BURSCH
ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(616) 450-4235
jbursch@ADFlegal.org

RORY T. GRAY
DAVID A. CORTMAN
ALLIANCE DEFENDING FREEDOM
1000 Hurricane Shoals Rd.
Suite D-1100
Lawrenceville, GA 30043
(770) 339-0774
rgray@ADFlegal.org
dcortman@ADFlegal.org

*Attorneys for Appellant*

# TABLE OF CONTENTS

Table of Authorities .................................................................. iii

Introduction ............................................................................. 1

Argument ................................................................................. 2

I.    This Court should reject Middleborough's extreme claims to deference, which amount to a blank check. ..................................... 2

II.   The middle school context is immaterial and cannot distinguish this case from *Tinker*. ................................................... 4

III.  Middleborough can't end-run the bar on viewpoint discrimination by asserting orthodoxy. ........................................... 6

IV.   L.M.'s t-shirt messages did not invade the rights of others. ........... 8

   A.   Antidiscrimination laws don't justify censoring L.M.'s protected speech. ....................................................... 8

   B.   Other students' rights don't depend on multi-factor tests or administrators' expertise. ........................................ 15

   C.   It's Middleborough's theory of the rights of others, not L.M.'s position, that leads to untenable results. ................. 16

   D.   L.M.'s protest of Middleborough's censorship didn't violate other student's rights. ............................................. 19

V.    Middleborough couldn't reasonably forecast that L.M.'s t-shirts would cause a material and substantial disruption ........... 20

   A.   None of Middleborough's cited factors support a reasonable forecast of substantial disruption. ..................... 20

   B.   *Tinker* doesn't allow for heckler's vetoes .............................. 22

   C.   There's no basis for a remand. ............................................. 24

VI.   Some dress code provisions are unconstitutional both facially and as applied to L.M.'s speech. ..................................................... 25

Conclusion .................................................................................................... 29

Certificate of Compliance ........................................................................... 30

Certificate of Service ................................................................................... 31

# TABLE OF AUTHORITIES

## Cases

*303 Creative LLC v. Elenis,*
  600 U.S. 570 (2023) ............................................................... 8

*A.M. ex rel. McAllum v. Cash,*
  585 F.3d 214 (5th Cir. 2009) .........................................27–28

*Adams ex rel. Kasper v. School Board of St. Johns County,*
  57 F.4th 791 (11th Cir. 2022).......................................... 11

*B.H. ex rel. Hawk v. Easton Area School District,*
  725 F.3d 293 (3d Cir. 2013)............................................. 14

*Benoni v. Boston & Maine Corp.,*
  828 F.2d 52 (1st Cir. 1987).............................................. 24

*Bethel School District No. 403 v. Fraser,*
  478 U.S. 675 (1986) ............................................5, 17, 28

*Board of Trustees of State University of New York v. Fox,*
  492 U.S. 469 (1989) ........................................................ 25

*Boroff v. Van Wert City Board of Education,*
  220 F.3d 465 (6th Cir. 2000) .......................................... 13

*Bowler v. Town of Hudson,*
  514 F. Supp. 2d 168 (D. Mass. 2007)............................. 12

*C1.G ex rel. C.G. v. Siegfried,*
  38 F.4th 1270 (10th Cir. 2022)....................................... 26

*Chiu v. Plano Independent School District,*
  339 F.3d 273 (5th Cir. 2003) .......................................... 26

*Citizens United v. FEC,*
  558 U.S. 310 (2010) ........................................................ 20

*Daigle v. Maine Medical Center, Inc.,*
  14 F.3d 684 (1st Cir. 1994)............................................. 14

*Dariano v. Morgan Hill Unified School District,*
　767 F.3d 764 (9th Cir. 2014) ..................................................23–24

*Davis ex rel. La Shonda D. v. Monroe County Board of Education,*
　526 U.S. 629 (1999) ....................................................................9, 11

*DeBoer v. Village of Oak Park,*
　267 F.3d 558 (7th Cir. 2001) ..........................................................19

*DeJohn v. Temple University,*
　537 F.3d 301 (3d Cir. 2008)......................................................10, 17

*Denno v. School Board of Volusia County,*
　218 F.3d 1267 (11th Cir. 2000) ......................................................13

*Dodge v. Evergreen School District #114,*
　56 F.4th 767 (9th Cir. 2022)...........................................................15

*Doe v. Hopkinton Public Schools,*
　19 F.4th 493 (1st Cir. 2021) ..............................................10–11, 25

*Gonzalez-Droz v. Gonzalez-Colon,*
　660 F.3d 1 (1st Cir. 2011)...............................................................25

*Guiles ex rel. Guiles v. Marineau,*
　461 F.3d 320 (2d Cir. 2006)............................................................14

*Harper v. Poway Unified School District,*
　445 F.3d 1166 (9th Cir. 2006) ..................................................12–13

*Harper v. Poway Unified School District,*
　455 F.3d 1052 (9th Cir. 2006) ........................................................13

*Harper v. Poway Unified School District,*
　549 U.S. 1262 (2007) ......................................................................12

*Hazelwood School District v. Kuhlmeier,*
　484 U.S. 260 (1988) ........................................................................13

*Holloman ex rel. Holloman v. Harland,*
　370 F.3d 1252 (11th Cir. 2004) ......................................................24

*Iancu v. Brunetti,*
    139 S. Ct. 2294 (2019) ................................................................ 5, 7

*J.S. ex. rel. Snyder v. Blue Mountain School District,*
    650 F.3d 915 (3d Cir. 2011) ............................................................ 17

*James v. Board of Education of Central District No. 1 of Towns of Addison,*
    461 F.2d 566 (2d Cir. 1972) ......................................................... 7, 20

*Janus v. American Federation of State, County, & Municipal Employees, Council 31,*
    138 S. Ct. 2448 (2018) ................................................................... 6

*Kennedy v. Bremerton School District,*
    142 S. Ct. 2407 (2022) ................................................................... 1

*Mahanoy Area School District v. B.L. ex rel. Levy,*
    141 S. Ct. 2038 (2021) .......................................................... passim

*Matal v. Tam,*
    582 U.S. 218 (2017) ...................................................................... 5

*McCauley v. University of the Virgin Islands,*
    618 F.3d 232 (3d Cir. 2010) ........................................................... 15

*Meriwether v. Hartop,*
    992 F.3d 492 (6th Cir. 2021) ........................................................ 7–8

*Morse v. Frederick,*
    551 U.S. 393 (2007) ...................................................... 5, 13–14, 18

*N.J. ex rel. Jacob v. Sonnabend,*
    37 F.4th 412 (7th Cir. 2022) ...................................................... 15–16

*Norris ex rel. A.M. v. Cape Elizabeth School District,*
    969 F.3d 12 (1st Cir. 2020) .................................................... passim

*Osediacz v. City of Cranston,*
    414 F.3d 136 (1st Cir. 2005) ........................................................ 25

*Otto v. City of Boca Raton,*
    981 F.3d 854 (11th Cir. 2020) ........................................................... 7

*Parents Defending Education v. Linn Mar Community School*
    *District,*
    83 F.4th 658 (8th Cir. 2023) .................................................. 9, 26–27

*Porto v. Town of Tewksbury,*
    488 F.3d 67 (1st Cir. 2007) ................................................................ 9

*Quarterman v. Byrd,*
    453 F.2d 54 (4th Cir. 1971) ............................................................. 26

*R.A.V. v. City of St. Paul,*
    505 U.S. 377 (1992) ........................................................................... 5

*Reed v. Town of Gilbert,*
    576 U.S. 155 (2015) ......................................................................... 20

*Rodriguez v. Maricopa County Community College District,*
    605 F.3d 703 (9th Cir. 2010) ........................................................... 12

*Rosenberger v. Rector & Visitors of University of Virginia,*
    515 U.S. 819 (1995) ......................................................................... 19

*Sapp v. School Board of Alachua County,*
    2011 WL 5084647 (N.D. Fla. Sept. 30, 2011) ................................. 14

*Saxe v. State College Area School District,*
    240 F.3d 200 (3d Cir. 2001) ..................................................... passim

*Shanley v. Northeast Independent School District,*
    462 F.2d 960 (5th Cir. 1972) ..................................................... 24, 27

*Speech First, Inc. v. Cartwright,*
    32 F.4th 1110 (11th Cir. 2022) .......................................................... 5

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard*
    *College,*
    600 U.S. 181 (2023) ........................................................................... 3

*Taylor v. Roswell Independent School District,*
    713 F.3d 25 (10th Cir. 2013) .........................................................23

*Terminiello v. City of Chicago,*
    337 U.S. 1 (1949) ............................................................................23

*Tinker v. Des Moines Independent Community School District,*
    393 U.S. 503 (1969) ............................................................... passim

*United States v. Varner,*
    948 F.3d 250 (5th Cir. 2020) ..........................................................8

*Vlaming v. West Point School Board,*
    2023 WL 8634968 (Va. Dec. 14, 2023)...........................................8

*West Virginia State Board of Education v. Barnette,*
    319 U.S. 624 (1943) ..........................................................................6

*Zamecnik v. Indian Prairie School District No. 204,*
    636 F.3d 874 (7th Cir. 2011) .............................................15–16, 24

## Statutes

Mass. Gen. Laws ch. 71, § 37O(a) .......................................................11

Mass. Gen. Laws ch. 76, § 5 ................................................................10

## Regulations

603 Mass. Code Regs. 26.01 ................................................................10

603 Mass. Code Regs. 26.07(2)............................................................10

# INTRODUCTION

Middleborough's legal theories and "[t]he district court's holding represent[ ] an alarming departure from precedent." South Carolina.Amicus.Br.11. Middleborough cites no case in which a court has approved "censorship of student speech" where, as here, "a school presses one view of a controversial topic on students, and a student expresses a different view." Life.Legal.Amicus.Br.3.

The school district displays pride flags, urges students to celebrate "Pride Spirit Week" to "bolster[ ] … LGBT rights," and tells students to "Rise Up to Protect Trans and GNC [or gender non-conforming] Students." App.26–27, 53. But when L.M. offered a counter-viewpoint to the school's gender-identity theory by wearing a t-shirt that said "There are only two genders," Middleborough censored his speech. App.18, 28. In effect, the school district "shut down one side of the debate, preventing all meaningful discussion on gender identity" at school.  Parents.Defending.Educ.Amicus.Br.6. And that *Tinker v. Des Moines Independent Community School District*, 393 U.S. 503, 513–14 (1969), does not allow.

Public schools must teach students "how to tolerate speech … of all kinds," an essential skill in our "pluralistic society." *Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407, 2430 (2022). Yet Middleborough has abandoned that vital lesson. Unless this Court rejects the notion that potential "hurt … feelings" justify censorship, Indep.Women's.L.

Ctr.Amicus.Br.12, Middleborough's students will flail in our "often dis-putatious[] society," *Tinker*, 393 U.S. at 509.

"Destroying critical thinking to avoid emotional upset is damaging our nations' youth …." Ctr.Am.Liberty.Amicus.Br.16. And this paternal-ism is remarkably one-sided. Under Middleborough's "own interpreta-tion of its policy and of state law, [the school district] would be guilty of creating a discriminatory and unsafe environment for conservative religious students." Life.Legal.Amicus.Br.8. This Court should reject Middleborough's attempt to "confine[ ] [L.M.] to the expression of those sentiments that are officially approved" and reverse the district court's judgment. *Tinker*, 393 U.S. at 511.

## ARGUMENT

### I. This Court should reject Middleborough's extreme claims to deference, which amount to a blank check.

Middleborough emphasizes one line from *Norris ex rel. A.M. v. Cape Elizabeth School District*, 969 F.3d 12, 30 (1st Cir. 2020), that says "[c]ourts generally defer to school administrators' decisions regarding student speech so long as their judgment is reasonable." Appel-leesBr.19. This Court gave an inch, and Middleborough takes a mile, insisting—repeatedly—that censoring L.M.'s speech was "reasonable" and therefore constitutional. *Id.* at 21, 27, 34.

But *Norris* didn't outsource judges' Article III role to school districts. Instead, the Court made clear that deference "does not

diminish [its] duty to ensure that [schools] do not infringe students' First Amendment rights under *Tinker*," and "the ultimate question whether a school has exceeded constitutional constraints rests with the courts and courts owe no deference to schools when they consider that question." *Norris*, 969 F.3d at 30 (cleaned up). *Norris* itself affirmed a preliminary injunction *against* the school district. *Id.* at 33.

Under *Tinker*, Middleborough's blank-check theory fares no better. It's true the Supreme Court referenced "the comprehensive authority of the States and of school officials … to prescribe and control conduct in the schools" but only "consistent with *fundamental constitutional safeguards.*" *Tinker*, 393 U.S. at 507 (emphasis added). Free-speech safeguards are what L.M.'s case is about. And under *Tinker*, the Supreme Court has consistently ruled in favor of students' free-speech claims and *against* school districts. *Tinker*, 393 U.S. at 514; *Mahanoy Area Sch. Dist. v. B.L. ex rel. Levy*, 141 S. Ct. 2038, 2048 (2021).

In sum, "deference does not imply abandonment or abdication of judicial review." *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 217 (2023) (quotation omitted). What matters in the end is "[t]he Constitution['s]" demands. *Id.* The Court should reject Middleborough's extreme theory of deference and "ensure [the school district's actions] do not infringe [L.M.'s] First Amendment rights under *Tinker*." *Norris*, 969 F.3d at 30 (cleaned up).

## II.    The middle school context is immaterial and cannot distinguish this case from *Tinker*.

Middleborough claims heightened powers to censor L.M.'s speech because he attends a middle school with ten- to fourteen-year-old students. AppelleesBr.16, 20. Perhaps L.M. and his peers' stage in the "maturation process," AppelleesBr.20, is a good reason for Middleborough to stop pushing gender-identity theory on impressionable children, App.53. But it's no basis for silencing L.M.'s counter-viewpoint. Middleborough "cannot license one side to speak freely while muzzling the other." Parents Defending Educ.Amicus.Br.11–12.

No one disputes that the school district allows—in fact, encourages—middle school students to discuss sex and gender-related issues. As the school district admits, the middle school "has an active LGTBQ+ community" with their own "club" to discuss related matters. AppelleesBr.8. Middleborough supports their speech, AppelleesBr.30, and sends its own sex and gender-related messages to students, OpeningBr.6. So the *subject matter* of L.M.'s t-shirt messages is allowed in middle school.

Middleborough simply dislikes L.M.'s views. The school district admits it targeted "his *view* [of] gender identity" and maintains that L.M. may "express his views on gender identity and transgender rights [only] outside of" school. AppelleesBr.31 (emphasis added). "[P]resumptively unconstitutional" viewpoint discrimination is not a basis for

giving the school district leeway—it's a reason to strike down Middle-borough's censorship. *Iancu v. Brunetti*, 139 S. Ct. 2294, 2299 (2019) (cleaned up). After all, "[t]he point of the First Amendment is that majority preferences must be expressed in some fashion other than silencing speech on the basis of its" viewpoint. *R.A.V. v. City of St. Paul*, 505 U.S. 377, 392 (1992).

Middleborough deems L.M.'s messages potentially offensive. *E.g.*, AppelleesBr.26–28. But *Tinker* outlaws viewpoint discrimination on that basis. *Matal v. Tam*, 582 U.S. 218, 244 (2017) (plurality opinion) (citing *Tinker*); *id.* at 250 (Kennedy, J., concurring in part and concurring in the judgment (agreeing)).[1] Students like L.M. have "undoubted freedom to advocate unpopular and controversial views in schools and classrooms." *Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675, 681 (1986). So public schools that "suppress [student] speech on political and social issues based on disagreement with the viewpoint expressed" assail "the very heart of the First Amendment." *Morse v. Frederick*, 551 U.S. 393, 423 (2007) (Alito, J., concurring).

Middleborough complains that L.M. doesn't cite free-speech cases "in a middle school setting." AppelleesBr.20. Yet "Mary Beth Tinker …

---

[1] The ACLU says that *Tinker* allows for such viewpoint discrimination. ACLU.Mass.Amicus.Br.15–16. But the cases it cites were decided before *Matal* proved the opposite. *Accord Speech First, Inc. v. Cartwright*, 32 F.4th 1110, 1127 n.6 (11th Cir. 2022).

was a 13-year-old student in junior high school." *Tinker*, 393 U.S. at 504. The Vietnam War "disrupted and divided this country as few other issues [e]ver have." *Id.* at 524 (Black, J., dissenting). Yet the Supreme Court upheld Mary Beth's right to wear a black armband protesting the war in junior high—just as it did two students in high school. *Id.* at 514. An age gap of two-to-three years didn't nullify constitutional protection against a school's viewpoint discrimination. *Id.* at 504.

The same is true here. If Mary Beth's anti-war message didn't "materially disrupt[ ] classwork or involve[ ] substantial disorder or invasion of the rights of others" in junior high school, *id.* at 513, neither did L.M.'s counter-message on sex and gender-related issues in middle school, OpeningBr.28–30, 41–42. L.M.'s speech is as protected as hers.

## III. Middleborough can't end-run the bar on viewpoint discrimination by asserting orthodoxy.

Middleborough asserts that "gender identity" isn't a "'viewpoint'" or "'philosophy'" but a fact. AppelleesBr.14. But that argument fails. Public schools can't withdraw "matters of profound value and concern to the public" like "gender identity" from public debate simply by declaring its view to be factual. *Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31*, 138 S. Ct. 2448, 2476 (2018) (cleaned up). That would allow schools to end-run the bar on viewpoint discrimination by asserting "orthodox[y] in … matters of opinion," which is never allowed. *W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943). And gender-

identity theory is an "idea[ ] or opinion[ ]"—a relatively recent one at that. *Iancu*, 139 S. Ct. at 2299; *accord Meriwether v. Hartop*, 992 F.3d 492, 506–07 (6th Cir. 2021); *Otto v. City of Boca Raton*, 981 F.3d 854, 864 (11th Cir. 2020); 12 Leading Scholars, *Philosophers Should Not Be Sanctioned Over Their Positions on Sex and Gender*, Inside Higher Ed (July 21, 2019), https://bit.ly/2M7mRt1.

Public schools' job is to prepare "students to think and analyze and to recognize the demagogue." *James v. Bd. of Educ. of Cent. Dist. No. 1 of Towns of Addison*, 461 F.2d 566, 574 (2d Cir. 1972). Under the First Amendment, Middleborough cannot "permit [the] prejudices of the community to prevail" or "sanction[ ] … [a] pall of orthodoxy … which chokes freedom of dissent." *Id.* at 574–75 (cleaned up).

Yet that's what the school district has done by claiming that L.M.'s ideological statement denies transgender or gender-nonconforming students' "existence." AppelleesBr.24, 36. No one suggests that L.M. mistreated his fellow students. Middleborough simply dislikes the implications of L.M.'s viewpoint: if there are only two genders, "gender identity [ideology] [is] not valid" or is "invalid and does not exist." AppelleesBr.8, 17. But that's a different philosophy of life, it doesn't deny any person's existence or inherent value. And the state cannot force L.M. to speak or live by a gender-identity theory that he doesn't hold. *Vlaming v. W. Point Sch. Bd.*, No. 211061, 2023 WL 8634968, at

*27 (Va. Dec. 14, 2023), *Meriwether*, 992 F.3d at 506–07, 510–11; *United States v. Varner*, 948 F.3d 250, 254–55 (5th Cir. 2020).

Under Middleborough's view, the state could ban students from wearing a t-shirt that says "There is no God" because that perspective offends religious students and challenges their belief system. But the First Amendment entitles students to express controversial ideas, even if others believe they are profoundly wrong. And public schools' role is to "protect[ ] a student's unpopular expression" because they "are the nurseries of democracy," a system that "only works if we protect the 'marketplace of ideas.'" *B.L.*, 141 S. Ct. at 2046.

## IV.   L.M.'s t-shirt messages did not invade the rights of others.

Middleborough hasn't met its burden of "justify[ing] [the] prohibition of [L.M.'s] particular expression of opinion"—not even close. *Tinker*, 393 U.S. at 509. L.M.'s t-shirt messages didn't invade other students' rights.

### A.   Antidiscrimination laws don't justify censoring L.M.'s protected speech.

Middleborough's primary argument is that it had to censor L.M.'s t-shirt messages to comply with state and federal antidiscrimination laws. *E.g.*, AppelleesBr.16, 22–23, 29. Not so. Antidiscrimination laws can't prevent L.M. from "tell[ing] people what they do not want to hear." *303 Creative LLC v. Elenis*, 600 U.S. 570, 602 (2023) (quotation omit-

8

ted). There's a fundamental difference between "non-expressive, physically harassing *conduct*" and "*speech* that listeners may consider deeply offensive." *Saxe v. State Coll. Area Sch. Dist.*, 240 F.3d 200, 206 (3d Cir. 2001) (Alito, J.) (emphasis added).

Consider Middleborough's display of pride flags and urging of students to support gender-identity theory, App.27, and to participate in Pride Spirit week, App.53. All of this contradicts certain religious students' beliefs, deeply offends them, and makes them feel unwelcome, unsupported, and ideologically unsafe at school. Under Middleborough's theory, the school district's own speech would constitute bullying and harassment on a protected ground.

Fortunately, no one can "avoid the strictures of the First Amendment simply by defining certain speech as 'bullying' or 'harassment.'" *Parents Defending Educ. v. Linn Mar Cmty. Sch. Dist.*, 83 F.4th 658, 667 (8th Cir. 2023). Under the Free Speech Clause, courts sharply limit antidiscrimination laws' application to speech. A prime example is *Davis ex rel. La Shonda D. v. Monroe County Board of Education*, 526 U.S. 629, 652 (1999), which foreclosed Title IX liability for "teasing and name-calling among school children." Instead, the Court required "behavior [that] is so severe, pervasive, and objectively offensive that it denies [students an] equal access to education."[2] *Id.* at 652.

---

[2] *Accord Porto v. Town of Tewksbury*, 488 F.3d 67, 72–73 (1st Cir. 2007).

Courts have imported *Davis*' "severity or pervasiveness" and "objectiv[ity]" requirements into the *Tinker* analysis to "shelter … core protected speech." *DeJohn v. Temple Univ.*, 537 F.3d 301, 318 (3d Cir. 2008) (applying *Tinker*); *accord Doe v. Hopkinton Pub. Schs.*, 19 F.4th 493, 505–06 (1st Cir. 2021); *Norris*, 969 F.3d at 29 n.18. Here, Middleborough can't show that L.M.'s speech meets either *Davis* requirement.

In addition, L.M.'s t-shirt messages didn't violate any state or federal laws. First, Massachusetts' public-accommodation statute bars "public schools" from "exclud[ing]" or "discriminat[ing] against" students "in obtaining the advantages, privileges and courses of study … on account of … gender identity." Mass. Gen. Laws ch. 76, § 5. The law applies to admissions, guidance, curricula, and extra-curricular activities, 603 Mass. Code Regs. 26.01, et seq., none of which L.M.'s speech effects or controls. Corresponding regulations tell "public schools" to "strive to prevent harassment or discrimination," but they don't equate protected speech with such blameworthy conduct. 603 Mass. Code Regs. 26.07(2). And L.M.'s "general statement of discontent" with Middleborough's viewpoint on sex and gender "is vastly and qualitatively different from bullying that targets and invades the rights of an individual student." *Hopkinton*, 19 F.4th at 506. "Even when it is appropriate to regulate harmful discriminatory conduct, [Middleborough] may not silence dissenting voices." Inst.Faith.Family.Amicus.Br.8.

Second, Massachusetts' anti-bullying statute prohibits "the repeated use" of "verbal … expression or a physical act or gesture or any combination thereof, directed at a victim that," among other things, "causes physical or emotional harm" or "creates a hostile environment at school." Mass. Gen. Laws ch. 71, § 37O(a). But L.M.'s t-shirt messages weren't frequent or directed at any individual. It's impossible for them to constitute "bullying" under the statute or this Court's precedent. *Hopkinton*, 19 F.4th at 506–08; *Norris*, 969 F.3d at 29. What's more, L.M.'s messages didn't "cause the school environment to be permeated with intimidation, ridicule or insult that is sufficiently severe or pervasive to alter the conditions of [anyone's] education." Mass. Gen. Laws ch. 71, § 37O(a). So the anti-bullying law doesn't apply.

Last, Middleborough alludes to Title IX. But that statute doesn't include gender identity. *Adams ex rel. Kasper v. Sch. Bd. of St. Johns Cnty.*, 57 F.4th 791, 812–14 (11th Cir. 2022) (en banc). Nor can Middleborough plausibly show that L.M.'s t-shirt message was "so severe, pervasive, and objectively offensive" that it denied other students' access to education. *Davis*, 526 U.S. at 652. Objectively, L.M.'s "t-shirt conveyed an idea in completely neutral, objective, and G-rated terms." Life.Legal.Amicus.Br.11. His ideological statement doesn't even

11

constitute name calling, let alone harassment. *Cf. Rodriguez v. Maricopa Cnty. Cmty. Coll. Dist.*, 605 F.3d 703, 710–11 (9th Cir. 2010) (rejecting similar harassment claims).

Middleborough argues that public schools may suppress speech that might cause LGBTQ+ students to feel subjective psychological discomfort, insecure, or unincluded. *E.g.*, AppelleesBr.17, 22–24, 26. *But see* OpeningBr.28–29. Yet *Tinker*'s rights-of-others "exception[ ] cannot be expanded to cover a student's untargeted political statement, no matter how unpopular that statement may be." FIRE.Amicus.Br.2. Speech is not violence, and "[m]erely invoking" words like targeting and "'safety' does not change this calculus because it does not change the fundamental nature of what [Middleborough] seek[s] to do: ban unpopular speech because it might make some people uncomfortable." Ctr.Am.Liberty.Amicus.Br.17.

Middleborough's lead case is *Harper v. Poway Unified School District*, 445 F.3d 1166 (9th Cir. 2006). AppelleesBr.17, 26, 28. But the Supreme Court declared that appeal moot and vacated the Ninth Circuit's judgment "to clear the path for future relitigation of the issues" presented. *Harper v. Poway Unified Sch. Dist.*, 549 U.S. 1262, 1262 (2007) (cleaned up). So "*Harper* lacks precedential value." *Bowler v. Town of Hudson*, 514 F. Supp. 2d 168, 179 (D. Mass. 2007). Rightly so because the *Harper* majority's decision was gravely mistaken, as several

Ninth Circuit judges and the local ACLU explained at the time.[3] *Harper* is even more clearly incorrect now. *E.g.*, *B.L.*, 141 S. Ct. at 2045–48; *Matal*, 582 U.S. at 244; *Morse*, 551 U.S. at 422–25 (Alito, J., concurring). And its reasoning conflicts with this Court's precedent, which holds that "speech … merely offensive to the listener is not enough" to violate other students' rights. *Norris*, 969 F.3d at 29 n.18 (citing *Tinker* and *Saxe*). "Because [L.M.]'s speech … goes to core First Amendment concerns, this Court should hold that it is categorically exempt from regulation based solely on the alleged psychological impact on listeners." Mountain.States.Amicus.Br.16.

Middleborough's other cases are equally inapt. AppelleesBr.27–29, 36. Some courts previously viewed *Fraser* and *Hazelwood School District v. Kuhlmeier*, 484 U.S. 260 (1988), as duplicate tests that allowed schools to bypass *Tinker*. E.g., *Boroff v. Van Wert City Bd. of Educ.*, 220 F.3d 465, 469–71 (6th Cir. 2000); *Denno v. Sch. Bd. of Volusia Cnty.*, 218 F.3d 1267, 1271–74 (11th Cir. 2000); *Sapp v. Sch. Bd. of Alachua Cnty.*, No. 1:09-cv-242, 2011 WL 5084647, at \*3–6 (N.D. Fla. Sept. 30,

---

[3] *Harper v. Poway Unified Sch. Dist.*, 455 F.3d 1052, 1054–55 (9th Cir. 2006) (O'Scannlain, J., dissenting from denial of rehearing en banc); *Harper*, 445 F.3d at 1193–1207 (Kozinski, C.J., dissenting); Br. Amicus Curiae of Am. Civil Liberties Union of San Diego & Imperial Cntys., *Harper v. Poway Unified Sch. Dist.*, No. 07-55224, 2008 WL 2110621, at \*1–29 (9th Cir. Apr. 3, 2008).

2011). Yet Middleborough concedes that *Tinker* applies here, *e.g.* Appellees Br. 5, 19–21, and never raised an independent *Fraser* or *Hazelwood* justification for censoring L.M.'s speech contemporaneously or in the district court. Because those arguments are now barred and waived, Middleborough's cited authorities are irrelevant. *Norris*, 969 F.3d at 25–28; *Daigle v. Me. Med. Ctr., Inc.*, 14 F.3d 684, 687–88 (1st Cir. 1994).

Moreover, *Tinker* has not been displaced here. *B.H. ex rel. Hawk v. Easton Area Sch. Dist.*, 725 F.3d 293, 316 (3d Cir. 2013) (en banc); *Guiles ex rel. Guiles v. Marineau*, 461 F.3d 320, 327–29 (2d Cir. 2006). *Fraser* allows public schools to bar students from speaking in a lewd or vulgar manner at school events. *Kuhlmeier* permits schools to control school-sponsored expression that is effectively their own speech. And *Tinker* governs all other student expression, besides speech that reasonably appears to promote illegal drug use, which *Morse* allows schools to ban. *B.L.*, 141 S. Ct. at 2045; *Morse*, 551 U.S. at 422–23 (Alito, J., concurring); *Norris*, 969 F.3d at 19. *Fraser* and *Kuhlmeier* do not apply to L.M.'s t-shirt messages, which aren't lewd or school-sponsored, independent of Middleborough's concession and waiver.

Summed up, there's no support for Middleborough's argument that public schools are free to censor any expression that might cause students cognitive dissonance. *Tinker* recognized that "[a]ny variation from the majority's opinion may inspire fear" or "discomfort," yet the Court upheld students' free-speech rights. 393 U.S. at 508–09; *accord*

*B.L.*, 141 S. Ct. at 2046. Likewise, other circuits have rejected school's efforts to censor speech based on community members' psychological unease. *E.g.*, *Dodge v. Evergreen Sch. Dist. #114*, 56 F.4th 767, 773, 786–87 (9th Cir. 2022); *Zamecnik v. Indian Prairie Sch. Dist. No. 204*, 636 F.3d 874, 877 (7th Cir. 2011); *McCauley v. Univ. of the Virgin Islands*, 618 F.3d 232, 250–52 (3d Cir. 2010). This Court should do the same—not create a circuit split as Middleborough urges.

## B.    Other students' rights don't depend on multi-factor tests or administrators' expertise.

Middleborough advocates a multi-factored test derived from *N.J. ex rel. Jacob v. Sonnabend*, 37 F.4th 412, 426 (7th Cir. 2022). Appel-leesBr.19–22. But that case doesn't help Middleborough. The Seventh Circuit said considerations like "the age and grade level of the students to whom the speech is directed," the "history of the school or student body," and school officials" "professional knowledge and experience" were relevant to a plaintiff's "case under [*Tinker*'s] *substantial-disruption* standard." *Sonnabend*, 37 F.4th at 426 (emphasis added). That's unremarkable. Courts often look to situational factors like these in determining whether school officials could "reasonably … forecast substantial disruption of or material interference with school activities." *Id.* (cleaned up).

But other students' right "to be secure and … let alone" isn't dependent on circumstances. *Tinker*, 393 U.S. at 508. And school

officials aren't judges, so they have no expertise in determining *what* rights other students possess. *Cf.* OpeningBr.37–39 (discussing this legal issue). The only portion of *Sonnabend* that's relevant says "there's no 'generalized hurt feelings' defense to a … school's violation of the First Amendment rights of its students." 37 F.4th at 426 (quoting *Zamecnik*, 636 F.3d at 877). And that supports L.M.'s position that other students have no right to be free from speech that causes ideological disagreement or psychological discomfort. OpeningBr.28–29.

The Seventh Circuit is an odd place for Middleborough to look for support. *Zamecnik* (which *Sonnabend* quotes) is a leading case in L.M.'s favor. There, the Seventh Circuit *upheld* a student's right to wear a t-shirt that said, "Be Happy, Not Gay," *Zamecnik*, 636 F.3d at 875, 882, because "people in our society do not have a legal right to prevent criticism of their beliefs or even their way of life," *id.* at 876. *Zamecnik* concluded that "a school that permits advocacy of the rights of homosexual students cannot be allowed to stifle criticism of homosexuality." *Id.* Yet Middleborough suppressed L.M.'s t-shirt messages because it read them as critical of transgender students—in direct violation of Seventh Circuit's precedent. AppelleesBr.30–31.

## C. It's Middleborough's theory of the rights of others, not L.M.'s position, that leads to untenable results.

Middleborough says that L.M.'s view of others' rights is untenable. *E.g.*, AppelleesBr.16–18. But the opposite is true. Reading *Tinker*'s

16

rights-of-others language "broadly" would allow the "assertion of virtually any 'rights' [to] transcend and eviscerate the protections of the First Amendment." *J.S. ex. rel. Snyder v. Blue Mountain Sch. Dist.*, 650 F.3d 915, 931 n.9 (3d Cir. 2011) (en banc). And it would render *Tinker*'s material-and-substantial-interference prong a dead letter.

This is a case in point. Over 20 years ago, then-Judge Alito said "[n]o one would suggest that a school could constitutionally ban any unwelcome verbal conduct which offends an individual because of some enumerated personal characteristics." *Saxe*, 240 F.3d at 215 (cleaned up). Yet that's Middleborough's lead argument. *E.g.*, AppelleesBr.28–29. This extreme position has startling consequences: "if school officials were permitted to prohibit expression to which other students objected, absent any further justification, the officials would have a license to prohibit virtually every type of expression." *Saxe*, 240 F.3d at 212 (cleaned up).

No "core protected speech" would be safe. *DeJohn*, 537 F.3d at 320. Schools could bar liberal views in Texas and South Carolina, and conservative opinions in California and New York. And students' "undoubted freedom to advocate unpopular and controversial views in schools and classrooms" would disappear. *Fraser*, 478 U.S. at 681. Middleborough's own examples make this clear. The school district says it could ban a t-shirt saying "there are only two religions," and by logical extension a shirt proclaiming "there is no god." AppelleesBr.17. So

religious students who believe only in Christianity and Judaism couldn't promote their beliefs in liberal areas, and atheist students couldn't advocate their views in conservative enclaves.

What's more, Middleborough claims the power to prohibit students from wearing a t-shirt saying "there are only two races." AppelleesBr.17. That rules out students wearing a t-shirt promoting Viktor Frankl's view that there are only two races, the decent man and the indecent man, or W.E.B. DuBois' position that race is a social construct. Students' ability to "comment[ ] on … political or social issue[s]" would be irretrievably damaged. *Morse*, 551 U.S. at 422 (Alito, J., concurring). For "much political and religious speech might be perceived as offensive to some," especially now that cancel culture's highest virtue is offense. *Id.* at 409.

In contrast, Middleborough argues that L.M.'s position prohibits only severe harassment, assault, or battery.[4] AppelleesBr.16, 24, 30. That's a strawman. Although those are "prototypical infringements on other students' rights," L.M. never said that *Tinker*'s second prong was confined to these archetypes. OpeningBr.24; *accord* OpeningBr.38–39. L.M.'s claim is that *Tinker* "bars expressive activity with a coercive element," OpeningBr.20, such as "severe harassment, assault, barring

---

[4] Middleborough also contends that L.M.'s argument would prevent schools from complying with state and federal law. AppelleesBr.29. That's not the case. *Supra* Part IV.A.

others' expression, pressing ideas on unwilling recipients, [and] threats," OpeningBr.33. What doesn't count is "speech that is merely offensive to the listener." *Norris*, 969 F.3d at 29 n.18. And potential for mere offense is all Middleborough shows.

### D. L.M.'s protest of Middleborough's censorship didn't violate other student's rights.

L.M.'s "There are [censored] genders" t-shirt protested Middleborough's censorship and didn't even address other students, let alone violate their rights. OpeningBr.30, 45. Middleborough says this shirt proclaimed "that the gender identity of transgender and gender nonconforming students was not valid." AppelleesBr.31. That's wrong. L.M.'s protest t-shirt stated no opinion on sex or gender because Middleborough censored his views. Indeed, the entire point of L.M.'s second t-shirt was his *inability* to address these topics.

Middleborough suppressed L.M.'s message because "his view[s]" on sex and gender were known. AppelleesBr.31. "[E]xamin[ing] speech to 'determine whether or not it is based on some ultimate idea'" is "viewpoint" discrimination. *DeBoer v. Vill. of Oak Park*, 267 F.3d 558, 571 (7th Cir. 2001) (quoting *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 835 (1995)). And Middleborough compounded this error by imposing a "speech restriction[ ] based on [L.M.'s] identity," which "reflects a content preference." *Reed v. Town of Gilbert*, 576 U.S.

155, 170 (2015) (cleaned up). The First Amendment allows none of this. *Accord Citizens United v. FEC*, 558 U.S. 310, 340–41 (2010).

## V. Middleborough couldn't reasonably forecast that L.M.'s t-shirts would cause a material and substantial disruption.

Middleborough's basis for forecasting a material and substantial disruption of is deeply flawed. Because the school district cites irrelevant factors and fails to draw "reasonable inferences flowing from concrete facts and not abstractions," *James*, 461 F.2d at 571, it cannot satisfy *Tinker*'s "demanding" test, *B.L.*, 141 S. Ct. at 2048. L.M.'s messages "bear[ ] no resemblance to the kinds of speech that courts have recognized as being likely to cause material disruption of the classroom." South Carolina.Amicus.Br.13–14.

### A. None of Middleborough's cited factors support a reasonable forecast of substantial disruption.

Middleborough cites several factors that it implies justify a reasonable forecast of substantial disruption. *E.g.*, AppelleesBr.24–26, 34. But none withstand scrutiny. Students have no "right[ ] to be shielded from *mere ideas* that can potentially cause distress in sensitive listeners." Mountain.States.Amicus.Br.8.

First, the school district turns to student survey data. But it offers only a vague affidavit saying that "over 20 individual student[s] comment[ed] about perceived bullying at school, feeling unwelcome at school, and expressing specific concerns about how the LGBTQ+

20

population is treated at school." App.102. It's not clear if these perceptions of bullying or unwelcomeness even related to LGBTQ+ issues or if any of the commenting students identify as LGBTQ+, and the affidavit says nothing about resulting disruption. What's more, L.M.'s ideological statement on matters of public concern and protest of Middleborough's censorship doesn't constitute adverse treatment of other students. *Cf. Saxe*, 240 F.3d at 206 (distinguishing between harassing conduct and unwanted speech).

Second, Middleborough says that—tragically—a few students have attempted to commit suicide or had suicidal ideations. Again, it offers only vague affidavits referencing these concerns without addressing their *cause*, App.88–89, other than to say "[t]hese situations have frequently cited LGBTQ+ status and treatment as a major factor," App.103. Middleborough fails to explain how these concerns play into *Tinker*'s substantial-disruption test, especially when L.M. didn't mistreat anyone and the affidavits show no link between students' troubles and passive t-shirt messages. "Students should be encouraged to understand that messages with which they disagree are acceptable and countering them is an opportunity for intellectual and psychological growth." Ctr.Am.Liberty.Amicus.Br.15.

Third, Middleborough cites sources, none of which bear any relation to its schools, claiming LGBTQ+ students are vulnerable and need validation. AppelleesBr.25–26. But L.M. never sought to prevent

Middleborough or other students from validating their beliefs. He merely sought to passively express his own views. In a sea of LGBTQ+ advocacy, L.M.'s message does not override the school's own expression. What's more, Middleborough's generalized evidence doesn't address *its students'* likely response to L.M.'s ideological messages or establish the "specific and significant fear of disruption" *Tinker* requires. *Saxe*, 240 F.3d at 211.

Last, Middleborough claims that LGBTQ+ students will be distracted by L.M.'s messages and won't concentrate on "their classwork." AppelleesBr.34. But there's no evidentiary basis for that assumption. And such run-of-the-mill distractions don't meet the high bar that *Tinker* sets for a "material and substantial interference with schoolwork or discipline." 393 U.S. at 511; *accord* OpeningBr.41–42.

## B. *Tinker* doesn't allow for heckler's vetoes.

Middleborough's core reason for predicting that L.M.'s t-shirt messages would cause a "substantial disruption" is the presumed "reactions of onlookers," AppelleesBr.33. or improper "response by [other] students," AppelleesBr.34–35. But the school district provides no evidence that an improper response was likely.

What's more, *Tinker* prohibits heckler's vetoes. "In a democratic society, it should be a given that people will have differences of opinion." Life.Legal.Amicus.Br.16. L.M.'s t-shirt messages may "deviate[ ] from

the views of another person" and that person "may start an argument or cause a disturbance. But our Constitution says we must take this risk." *Tinker*, 393 U.S. at 508. The Supreme Court relied on *Terminiello v. City of Chicago*, 337 U.S. 1 (1949), for these principles. *Tinker*, 393 U.S. at 508. That decision recognizes speech "may strike at prejudices and preconceptions and have profound unsettling effects." *Terminiello*, 337 U.S. at 4. Nonetheless, government can't silence a speaker because listeners are "stirred … to anger" or bring "about a condition of unrest."[5] *Id.* at 5.

Middleborough claims the opposite based on *Taylor v. Roswell Independent School District*, 713 F.3d 25 (10th Cir. 2013). AppelleesBr.33. But *Taylor* doesn't help. The Tenth Circuit limited its observation that "the blameworthiness of the speaker" is irrelevant to cases where "there is no indication … that the problematic student disruptions were aimed at stopping plaintiffs' expression." *Taylor*, 713 F.3d at 38 n.11. Yet disruption aimed at stopping L.M.'s expression is exactly what Middleborough claims to fear. AppelleesBr.33–35.

The school district also cites *Dariano v. Morgan Hill Unified School District*, 767 F.3d 764 (9th Cir. 2014). AppelleesBr.33. But that case misrepresents *Taylor* and was wrongly decided for the reasons

_____

[5] *Accord B.L.*, 141 S. Ct. at 2055–56 (Alito, J., concurring) (quotation omitted).

explained in Judge O'Scannlain's en banc dissent. *Dariano*, 767 F.3d at 766–73 & n.6 (O'Scannlain, J., dissenting from the denial of rehearing en banc); *accord* OpeningBr.44–45, 49–50. No other circuit has agreed with *Dariano*'s conclusion that *Tinker* allows for heckler's vetoes. And decisions by three other circuits directly contradict it. *E.g.*, *Zamecnik*, 636 F.3d at 879; *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1275–76 (11th Cir. 2004); *Shanley v. Ne. Indep. Sch. Dist.*, 462 F.2d 960, 971 n.8 (5th Cir. 1972). This Court should reject Middleborough's invitation to join the wrong side of a lopsided circuit split.

## C.    There's no basis for a remand.

Middleborough asks for a remand if this Court reaches the substantial-disruption issue. AppelleesBr.18, 32–33, 42. But there's no basis for that request. The parties agreed that no significant factual disputes exist and that the district court should enter a final judgment based on its preliminary injunction ruling. Doc.61. It's too late for Middleborough to suggest that more is needed from the district court when it voluntarily waived that opportunity.

Additionally, Middleborough gives no reason for changing its position. Whether the school district reasonably forecasts a substantial disruption resulting from L.M.'s speech is a legal question, not a factual one. That question has been raised and briefed at every stage. *Cf. Benoni v. Bos. & Me. Corp.*, 828 F.2d 52, 56 (1st Cir. 1987) (declining to

remand in similar circumstances). Because "the issues are purely legal and the outcome is clear," this Court should decide "the merits" and reject Middleborough's unfounded request for a remand, which would result in the same delay and expense that the parties' stipulation was designed to avoid. *Gonzalez-Droz v. Gonzalez-Colon*, 660 F.3d 1, 9 (1st Cir. 2011); *accord* Doc.61 at 1–2.

## VI. Some dress code provisions are unconstitutional both facially and as applied to L.M.'s speech.

Middleborough disputes L.M.'s standing to challenge the dress code and defends its extreme provisions. AppelleesBr.37–42. But these arguments fail. L.M. has standing to challenge the dress code because he's enrolled in middle school, desires to speak on matters of public concern, App.19, 25–26, 32–33, and is "'within the class of persons potentially chilled'" by the dress code. *Hopkinton*, 19 F.4th at 511 (quoting *Osediacz v. City of Cranston*, 414 F.3d 136, 142 (1st Cir. 2005)). In addition, Middleborough applied the policy to L.M. twice—censoring and chilling his speech. No further "adverse action" is needed. AppelleesBr.19; *accord Bd. of Trs. of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 484 (1989).

Middleborough's arguments fare no better on the merits. First, the school district fails to address L.M.'s prior-restraint claim. OpeningBr.51–52, 54–55. Middleborough effectively concedes that officials enjoy unbridled discretion to discriminate based on content or viewpoint

under the "hate speech," "target[ing] groups," and "unacceptable to … community standards" provisions. App.75. This "absence …of any criteria to be followed by the school authorities" is fatal, *Quarterman v. Byrd*, 453 F.2d 54, 59 (4th Cir. 1971), because "even in schools there exists a clearly established right to be free of prior restraints except where they are designed to maintain discipline or to prevent school disruption and are narrowly drawn to achieve that goal," *Chiu v. Plano Indep. Sch. Dist.*, 339 F.3d 273, 282 (5th Cir. 2003).

Second, Middleborough doesn't attempt to cabin the dress code's "hate speech," "target[ing] groups," and "unacceptable to community standards" provisions to constitutionally proscribable speech. And most expression that potentially falls under these classifications is protected. So all three provisions are unconstitutionally overbroad. *Cf. Saxe*, 240 F.3d at 214–17 (engaging in overbreadth analysis of a school policy); *accord* ACLU.Mass.Amicus.Br.14 n.11 ("the language of the dress code is overbroad").

Public schools "cannot avoid the strictures of the First Amendment simply by defining certain" protected expression as hate speech, targeting groups, or unacceptable to the community. *Parents Defending Educ.*, 83 F.4th at 667. There's no First Amendment exception for hateful or unpopular speech. *C1.G ex rel. C.G. v. Siegfried*, 38 F.4th 1270, 1279 (10th Cir. 2022); *Saxe*, 240 F.3d at 211.

Last, the policy's "hate speech," "targeting groups," and "unacceptable to community standards" provisions are unconstitutionally vague because they are undefined, fail to "provide adequate notice of what conduct is prohibited" to students, and highly "susceptible to arbitrary enforcement" by officials on an "ad hoc and subjective basis." *Parents Defending Educ.*, 83 F.4th at 668–69. This case demonstrates that. What's more, these provisions fail to "reasonabl[y]" reflect the "constitutional standards" that apply under *Tinker* "to the orderly administration of … school activities." *Shanley*, 462 F.2d at 977.

Middleborough's vagueness defense hinges on *A.M. ex rel. McAllum v. Cash*, 585 F.3d 214 (5th Cir. 2009).[6] AppelleesBr.37–39. But that case is nothing like this one. There, the plaintiffs brought Confederate-battle-flag purses to class, were censored, and challenged a dress code that banned "inappropriate symbolism, especially that which discriminates against other students based on race, religion, or sex," which operated in tandem with another policy that specifically barred "the visible display of the Confederate flag" following "racial strife … at the school." *A.M.*, 585 F.3d at 217 (quotation omitted). In those unique circumstances, *A.M.* said the girls had adequate notice of what was proscribed "via a policy specially prohibiting visible displays of the

---

[6] *A.M.* is not relevant to L.M.'s prior restraint or overbreadth claims because the plaintiffs in that case didn't raise the former and waived the latter. 585 F.3d at 225 n.8.

Confederate battle flag." *Id.* at 225. In contrast, Middleborough has no specific policy banning alternative views on sex and gender or protesting censorship, so the Fifth Circuit's ruling is inapposite.

*A.M.* relies on *Fraser*, *id.*, which involved a student's lewd and vulgar speech at a school assembly. 478 U.S. at 685. The Supreme Court there rejected the student's vagueness challenge to a policy "proscribing 'obscene' language" because the policy "gave adequate warning … that his lewd speech could subject him to sanctions." *Id.* at 686. *Fraser*'s conclusion is unremarkable because the ordinary meaning of obscene language encompasses lewd and vulgar speech. But terms like "hate speech," "targeting groups," and "unacceptable to community standards" lack an agreed-on, ordinary meaning. They are inherently subjective, fail to give adequate notice, and are unconstitutionally vague.

## CONCLUSION

For the foregoing reasons, and those explained in L.M.'s opening brief, this Court should reverse and remand for the district court to enter final judgment and a permanent injunction in L.M.'s favor.

Dated: December 18, 2023

                              Respectfully submitted,

                              s/Rory T. Gray
TYSON C. LANGHOFER            RORY T. GRAY
P. LOGAN SPENA                DAVID A. CORTMAN
ALLIANCE DEFENDING FREEDOM    ALLIANCE DEFENDING FREEDOM
44180 Riverside Pkwy          1000 Hurricane Shoals Rd.
Lansdowne, VA 20176           Suite D-1100
(571) 707-4655                Lawrenceville, GA 30043
tlanghofer@ADFlegal.org       (770) 339-0774
lspena@ADFlegal.org           rgray@ADFlegal.org
                              dcortman@ADFlegal.org
ANDREW D. BECKWITH
SAMUEL J. WHITING             JOHN J. BURSCH
MASSACHUSETTS FAMILY          ALLIANCE DEFENDING FREEDOM
INSTITUTE                     440 First Street NW, Suite 600
401 Edgewater Pl., Ste. 580   Washington, DC 20001
Wakefield, MA 01880           (616) 450-4235
(781) 569-0400                jbursch@ADFlegal.org
andrew@mafamily.org
sam@mafamily.org

*Attorneys for Appellant*

## CERTIFICATE OF COMPLIANCE

This brief complies with the word limit of Fed. R. App. P. 32(a)(7)(B) because this brief contains 6,174 words, excluding parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in Word 365 using a proportionally spaced typeface, 14-point Century Schoolbook.

Dated: December 18, 2023

*s/Rory T. Gray*
Rory T. Gray

*Attorney for Appellant*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 18, 2023, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the First Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*s/Rory T. Gray*
Rory T. Gray

*Attorney for Appellant*